**Charles P. JONES, Plaintiff,**

v.

**The ILLINOIS DEPARTMENT OF REHABILITATION SERVICES and James S. Jeffers, in his official capacity as Director of the Illinois Department of Rehabilitation Services, and The Illinois Institute of Technology, and Dr. Thomas L. Martin, Jr., in his official capacity as President of the Illinois Institute of Technology, Defendants.**

No. 79 C 5396.

United States District Court, N. D. Illinois, E. D.

Jan. 12, 1981.

Larry J. Goldberg, Marc P. Charmatz, Washington, D. C., Freda Merritt, Chicago, Ill., for plaintiff.

Tyrone C. Fahner, Atty. Gen. of Ill., Mary Anne Smith, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge:

This matter comes before the court on cross-motions for summary judgment. For the reasons set forth below, each motion is granted in part and denied in part.

The parties have stipulated to the facts. Plaintiff is a deaf person and therefore is a handicapped individual within the meaning of section 7(7)[1] of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–794 (1976), *as amended by* Rehabilitation Act Amendments of 1974, Pub.L.No. 93–516, 88 Stat. 1617 (codified in scattered sections of 29 U.S.C. (1976)), Rehabilitation Act Extension of 1976, Pub.L.No. 94–230, 90 Stat. 211 (codified in scattered sections of 29 U.S.C. (1976)), Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, Pub.L.No. 95–602, 92 Stat. 2955 (codified in scattered sections of 29 U.S.C. (Supp.1980)) (the "Act"), and is a qualified handicapped person within the meaning of 45 C.F.R. § 84.3(k) (1979).[2] Defendant Illinois Department of Rehabilitation Services ("IDRS") is the agency of the state of Illinois which administers that state's vocational rehabilitation program and receives financial assistance from the Rehabilitation Services Administration[3] in order to carry out the state vocational rehabilitation program. Defendant James S. Jeffers ("Jeffers") is the Director of IDRS and as such is responsible for the direction and administration of IDRS. Defendant Illinois Institute of Technology ("IIT") is a not for profit corporation under the laws of the state of Illinois and is a postsecondary educational institution. IIT is a recipient of federal financial assistance and has agreed to comply with section 504 of the Act, 29 U.S.C. § 794,[4] and its implementing regulation, 45 C.F.R. §§ 84.41–84.47, as a condition of receiving such financial assistance. Defendant Dr. Thomas L. Martin, Jr. ("Martin"), is the President of IIT and as such is responsible for the administration of IIT.

Plaintiff, who is a student at IIT majoring in mechanical engineering, must have the services of a qualified interpreter in order to effectively participate in and benefit from his classes and to complete his academic program at IIT. IDRS has determined that plaintiff is eligible[5] for voca-

---

1. 29 U.S.C. § 706(7) provides in pertinent part:
 (A) Except as otherwise provided in subparagraph (B), the term "handicapped individual" means any individual who (i) has a physical or mental disability which for such individual constitutes or results in a substantial handicap to employment and (ii) can reasonably be expected to benefit in terms of employability from vocational rehabilitation services provided pursuant to subchapters I and III of this chapter.

2. 45 C.F.R. § 84.3(k) provides in pertinent part: "Qualified handicapped person" means:

 . . . . .

 (3) With respect to postsecondary and vocational education services, a handicapped person who meets the academic and technical standards requisite to admission or participation in the recipient's education program or activity.

 . . . . .

3. Under the reorganization brought about due to the formation of the Department of Education, the functions of the Rehabilitation Services Administration have been transferred to the Office of the Special Education and Rehabilitation Services in the Department of Education. Department of Education Organization Act, P.L. No. 96–88, § 207, 93 Stat. 668, 674 (1979).

4. 29 U.S.C. § 794 provides in pertinent part:
 No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

5. 45 C.F.R. § 1361.1(f) provides in pertinent part:
 "Eligible" or "eligibility" when used in relation to an individual's qualification for vocational rehabilitation services, refers to a certification that:
 (1) The individual has a physical or mental disability which for such individual constitutes or results in a substantial handicap to employment; and

tional rehabilitation services,[6] as those terms are used in 45 C.F.R. § 1361.1.

On August 10, 1979 Jeffers advised IIT in writing that IDRS could not legally assume the cost of interpreter services for plaintiff's classes at IIT which were to begin in the Fall of 1979. On August 27, 1979 plaintiff began his mechanical engineering classes at IIT and IIT provided a qualified sign language interpreter for plaintiff. On October 4, 1979 IIT wrote Jeffers stating that IIT would not continue to provide interpreter services to plaintiff. IDRS provided interpreter services to plaintiff from October 8, 1979 until October 26, 1979 when Jeffers finally determined that IDRS would make no further payments for interpreter services for plaintiff. On October 29, 1979 IIT resumed providing interpreter services for plaintiff and continued to do so until the end of his first semester on December 18, 1979. On December 11, 1979 IIT in-

formed plaintiff that IIT would not provide interpreter services for plaintiff's second semester classes. Subsequently, IDRS and IIT agreed to share the cost of interpreter services for plaintiff pending determination of the cross-motions for summary judgment.

Plaintiff contends that the failure of IDRS and Jeffers to provide plaintiff with interpreter services violates section 103(a)(6) of the Act, 29 U.S.C. § 723(a)(6),[7] and the regulation promulgated thereunder, 45 C.F.R. § 1361.1(ee);[8] section 504 of the Act, 29 U.S.C. § 794,[9] and the regulations promulgated thereunder, 45 C.F.R. §§ 84.4 [10] and 84.52;[11] and the equal protection clause of the fourteenth amendment to the United States Constitution.[12] Plaintiff contends that the failure of IIT and Martin to provide plaintiff with interpreter services violates section 504 of the Act [13] and the regulation promulgated thereunder, 45 C.F.R. § 84.44(d).[14] IIT and Martin contend

(2) Vocational rehabilitation services may reasonably be expected to benefit the individual in terms of employability.

**6.** 45 C.F.R. § 1361.1(ee)(1) provides in pertinent part:

"Vocational rehabilitation services," when provided to an individual, means:

. . . . .

(viii) Interpreter services for the deaf . . . .

**7.** 29 U.S.C. § 723(a) provides in pertinent part:

Vocational rehabilitation services provided under this chapter are any goods or services necessary to render a handicapped individual employable, including, but not limited to, the following:

. . . . .

(6) interpreter services for deaf individuals . . . .

**8.** See note 6 *supra.*

**9.** See note 4 *supra.*

**10.** 45 C.F.R. § 84.4(b)(4) provides:

A recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same State.

**11.** 45 C.F.R. § 84.52 provides in pertinent part:

(a) *General.* In providing health, welfare, or other social services or benefits, a recipient may not, on the basis of handicap:

. . . . .

(4) Provide benefits or services in a manner that limits or has the effect of limiting the participation of qualified handicapped persons . . . .

. . . . .

(d) *Auxiliary aids.* (1) A recipient to which this subpart applies that employs fifteen or more persons shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question.

. . . . .

(3) For the purpose of this paragraph, auxiliary aids may include brailled and taped material, interpreters, and other aids for persons with impaired hearing or vision.

**12.** Section 1 of the fourteenth amendment to the United States Constitution provides in pertinent part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

**13.** See note 4 *supra.*

**14.** 45 C.F.R. § 84.44(d) provides in pertinent part:

*Auxiliary aids.* (1) A recipient to which this subpart applies shall take such steps as

that the primary obligation for provision of interpreter services to plaintiff is imposed upon IDRS, relying upon the Analysis of the Final Regulations, 45 C.F.R. pt. 84, app. A, ¶ 31.[15] With respect to the claim under section 103(a) of the Act, IDRS and Jeffers contend that there is no private right of action under title I of the Act, 29 U.S.C. §§ 720–751, that plaintiff failed to exhaust his administrative remedies, that the court lacks subject matter jurisdiction, and that claims for monetary relief against IDRS and Jeffers are barred by the eleventh amendment to the United States Constitu-

tion.[16] With respect to the claims under section 504 of the Act, IDRS and Jeffers contend that sections 101(a)(8), 101(a)(12), and 103(a)(3) of the Act, 29 U.S.C. §§ 721(a)(8), 721(a)(12)[17] and 723(a)(3),[18] prohibit IDRS from providing interpreter services to plaintiff, that IIT and Martin do not have standing, and that claims for monetary relief against IDRS and Jeffers are barred by the eleventh amendment.

The court will first address plaintiff's claim under title I of the Act. The purpose of title I is to authorize grants to assist states in meeting the current and future

---

are necessary to ensure that no handicapped student is denied the benefits of, excluded from participation in, or otherwise subjected to discrimination under the education program or activity operated by the recipient because of the absence of educational auxiliary aids for students with impaired sensory, manual, or speaking skills.

(2) Auxiliary aids may include taped texts, interpreters or other effective methods of making orally delivered materials available to students with hearing impairments . . . .

15. 45 C.F.R. pt. 84, App. A, ¶ 31 provides in pertinent part:

Under § 84.44(d), a recipient must ensure that no handicapped student is subject to discrimination in the recipient's program because of the absence of necessary auxiliary aids. Colleges and universities expressed concern about the costs of compliance with this provision.

The Department emphasizes that recipients can usually meet this obligation by assisting students in using existing resources for auxiliary aids such as state vocational rehabilitation agencies and private charitable organizations. Indeed, the Department anticipates that the bulk of auxiliary aids will be paid for by state and private agencies, not by colleges or universities.

16. The eleventh amendment to the United States Constitution provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

17. 29 U.S.C. §§ 721(a)(8) and 721(a)(12) provide in pertinent part:

In order to be eligible to participate in programs under this subchapter, a State shall submit to the Commissioner a State plan for vocational rehabilitation services for a three-year period and, upon request of the Commissioner, shall make such annual revisions

in the plan as may be necessary. Each such plan shall—

(8) provide, at a minimum, for the provision of the vocational rehabilitation services specified in clauses (1) through (3) of subsection (a) of section 723 of this title, and the remainder of such services specified in such section. after full consideration of eligibility for similar benefits under any other program . . . .

(12)(A) provide satisfactory assurances to the Commissioner that, in the provision of vocational rehabilitation services, maximum utilization shall be made of public or other vocational or technical training facilities or other appropriate resources in the community; and

(B) provide (as appropriate) for entering into agreements with the operators of rehabilitation facilities for the provision of services for the rehabilitation of handicapped individuals . . . .

18. 29 U.S.C. § 723(a) provides in pertinent part:

(a) Vocational rehabilitation services provided under this chapter are any goods or services necessary to render a handicapped individual employable, including, but not limited to, the following:

(3) vocational and other training services for handicapped individuals, which shall include personal and vocational adjustment, books, and other training materials, and services to the families of such individuals as are necessary to the adjustment or rehabilitation of such individuals: Provided, That no training services in institutions of higher education shall be paid for with funds under this subchapter unless maximum efforts have been made to secure grant assistance, in whole or in part, from other sources to pay for such training . . . .

needs of handicapped individuals, so that such individuals may prepare for and engage in gainful employment to the extent of their capabilities. Section 100(a) of the Act, 29 U.S.C. § 720(a).[19] Under part A of title I each state is required to submit to the Commissioner of the Rehabilitation Services Administration (the "Commissioner") a state plan for vocational rehabilitation services for a three-year period in order to be eligible to participate in programs under title I. Section 101 of the Act, 29 U.S.C. § 721(a).[20] Part A of title I also specifies the contents of each state plan (section 101(a) of the Act, 29 U.S.C. § 721(a))[21] and requires the Commissioner to insure that the individualized written rehabilitation program for each handicapped individual developed jointly by the vocational rehabilitation counselor or coordinator and the handicapped individual meets certain enumerated requirements (section 102(a)–(b) of the Act, 29 U.S.C. § 722(a)–(b)).[22] Finally, part A of title I defines the scope of vocational rehabilitation services provided to individuals under title I as any goods or services necessary to render a handicapped individual employable and gives a noninclusive list of such goods or services. Section 103(a) of the Act, 29 U.S.C. § 723(a).[23]

Any discussion of whether a private cause of action is implied under a statute must begin with the factors identified in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975):

> In determining whether a private remedy is implicit in a statute not expressly

providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," . . .—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

The Supreme Court has decided that each of these factors is not entitled to equal weight and has indicated that in appropriate cases it is necessary to consider only the first two or three factors. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979); *Davis v. Ball Memorial Hospital Ass'n*, 640 F.2d 30, at 44, (7th Cir. 1980).

The first question, whether the statute was enacted for the benefit of a special class of which plaintiff is a member, is answered by looking to the language of the statute itself. *Cannon v. University of Chicago*, 441 U.S. 677, 689, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). Language in the statute which expressly identifies the class Congress intended to benefit and which confers a right directly on a class of persons

---

**19.** 29 U.S.C. § 720(a) provides:

The purpose of this subchapter is to authorize grants to assist States to meet the current and future needs of handicapped individuals, so that such individuals may prepare for and engage in gainful employment to the extent of their capabilities.

**20.** See note 17 *supra*.

**21.** See note 17 *supra*.

**22.** 29 U.S.C. § 722(a)–(b) provides in pertinent part:

(a) The Commissioner shall insure that the individualized written rehabilitation program . . . is developed jointly by the vocational rehabilitation counselor or coordinator and the handicapped individual . . . and that such

program meets the requirements set forth in subsection (b) of this section . . . .

(b) . . . Such program shall include, but not be limited to (1) a statement of long-range rehabilitation goals for the individual and intermediate rehabilitation objectives related to the attainment of such goals, (2) a statement of the specific vocational rehabilitation services to be provided, (3) the projected date for the initiation and the anticipated duration of each such service, [and] (4) objective criteria and an evaluation procedure and schedule for determining whether such objectives and goals are being achieved. . . .

**23.** See note 7 *supra*.

that includes the plaintiff or creates a duty in favor of the plaintiff is generally the most accurate indicator of the propriety of implication of a cause of action. *Id.* at 690 & n.13, 99 S.Ct. at 1954 & n.13; *Simpson v. Reynolds Metals Co., Inc.,* 629 F.2d 1226, 1239 (7th Cir. 1980). The purpose of title I

is to authorize grants to assist States to meet the current and future needs of handicapped individuals, so that such individuals may prepare for and engage in gainful employment to the extent of their capabilities. Section 100 of the Act, 29 U.S.C. § 720.

There is thus no doubt that plaintiff is among the class for whose especial benefit this legislation was enacted. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 61, 98 S.Ct. 1670, 1678, 56 L.Ed.2d 106 (1978). While handicapped individuals are the class for whose especial benefit title I was enacted, by its terms, the language of title I does not manifestly endow any handicapped individual with a private judicial remedy. *Simpson v. Reynolds Metals Co., Inc.,* 629 F.2d at 1239. Rather, the language permits: (1) a state, if the Commissioner has disapproved a plan because it does not fulfill the considerations specified in section 101(a) or if the Commissioner has found either that a state plan has been so changed that it no longer

complies with the requirements of section 101(a) or that in the administration of the plan there is failure to comply substantially with any provision of the plan, to obtain judicial review of the Commissioner's determination in the United States Court of Appeals for the circuit in which the state is located, section 101 of the Act, 29 U.S.C. § 721;[24] and (2) a handicapped individual, who is not satisfied with the review by the director of the state agency designated to administer the state plan of the determination made by the rehabilitation counselor or coordinator regarding his individualized written rehabilitation program, to request the Secretary to review the decision of the director, section 102(d) of the Act, 29 U.S.C. § 722(d).[25] The lack of any right- or duty-creating language in title I makes implication of a private judicial remedy difficult. *Id.* at 1240.

The second question, whether there is any indication of legislative intent either to create such a remedy or to deny one, must be answered in the negative. There is no indication whatever in the legislative history of title I which suggests a Congressional intention to create or deny a private cause of action under title I. While the absence of anything in the legislative history that indicates an intention to confer any private

---

**24.** 29 U.S.C. § 721 provides in pertinent part:

(b) The Commissioner shall approve any plan which he finds fulfills the conditions specified in subsection (a) of this section, and he shall disapprove any plan which does not fulfill such conditions. . . .

(c)(1) Whenever the Commissioner ... finds that—

(A) the plan has been so changed that it no longer complies with the requirements of subsection (a) of this section; or

(B) in the administration of the plan there is a failure to comply substantially with any provision of such plan,

the Commissioner shall notify such State agency that no further payments will be made to the State under this subchapter (or, in his discretion, that such further payments will be reduced ... or that further payments will not be made to the State only for projects under the parts of the State plan affected by such failure), until he is satisfied there is no longer any such failure. . . .

(d)(1) Any State which is dissatisfied with a final determination of the Commissioner under subsection (b) or (c) of this section

may file a petition for judicial review of such determination in the United States Court of Appeals for the circuit in which the State is located. . . .

**25.** 29 U.S.C. § 722(d) provides in pertinent part:

(1) The Director of any designated State unit shall establish procedures for the review of determinations made by the rehabilitation counselor or coordinator under this section, upon the request of a handicapped individual . . . . Such procedures shall include a requirement that the final decision concerning the review of any such determination be made in writing by the Director. . . .

(2) Any handicapped individual ... who is not satisfied with the final decision made under paragraph (1) by the Director of the designated State unit may request the Secretary to review such decision. Upon such request the Secretary shall conduct such a review and shall make recommendations to the Director as to the appropriate disposition of the matter.

right of action is hardly helpful to plaintiff, it does not automatically undermine his position. *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 18, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979). Here Congress has expressly provided both judicial and administrative means for enforcing compliance with title I. Where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. *Id.* at 19. "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Id.* at 20 (quoting *Botany Worsted Mills v. United States,* 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379 (1929)). Furthermore, in 1978 when Congress amended the Act to expressly provide that the same remedies, procedures and rights set forth in title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d to 2000d–4, were applicable to any person aggrieved by any act or failure to act by any recipient of federal assistance or federal provider of such assistance under section 504 of the Act, section 505 of the Act, 29 U.S.C. § 794a,[26] it amended section 102 of the Act to provide for review of final decisions of a director by the Commissioner, 29 U.S.C. § 722(d)(2).[27] These amendments indicate an intention not to extend a private right of action to such cases under title I. *Davis v. Ball Memorial Hospital Ass'n,* slip op. at 45.

The provision of an express judicial remedy for a state which is unsatisfied with the Commissioner's determination and of an express administrative remedy for a handicapped individual who is unsatisfied with his individualized written rehabilitation program indicates that the third question, whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff, must also be answered in the negative.

[U]nder *Cort,* a private remedy should not be implied if it would frustrate the underlying purpose of the legislative scheme. On the other hand, when that remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute. *Cannon v. University of Chicago,* 441 U.S. at 703, 99 S.Ct. at 1961 (footnote omitted).

The express provision of both judicial and administrative remedies, insofar as it discloses the underlying purposes of the legislative scheme, suggests that implication of a private right of action would be inconsistent with the legislative scheme. *Simpson v. Reynolds Metals Co., Inc.,* 629 F.2d at 1243.

After considering the first three factors enunciated in *Cort v. Ash,* the court concludes that a private right of action cannot be implied under title I.[28] Therefore, with respect to title I of the Act, the motion of IDRS and Jeffers for summary judgment is granted and the motion of plaintiff for summary judgment is denied.

The court will next address plaintiff's claim under section 504 of the Act. Section 504 prohibits exclusion from the participation in, denial of the benefits of, or discrimination under any program or activity receiving federal financial assistance of an otherwise qualified handicapped individual solely by reason of his handicap.[29] The regulations promulgated under section 504 prohibit recipients of federal financial assistance from utilizing criteria or methods of administration that, *inter alia,* have the effect of subjecting qualified handicapped persons to discrimination, 45 C.F.R. § 84.-4(b)(4),[30] and from providing benefits or

---

**26.** 29 U.S.C. § 794a(a)(2) provides:

The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

**27.** See note 25 *supra.*

**28.** Since the court has held that there is no private right of action under title I, it need not consider the contentions of IDRS and Jeffers that plaintiff failed to exhaust his administrative remedies, that the court lacks subject matter jurisdiction and that claims for monetary relief against IDRS and Jeffers are barred by the eleventh amendment.

**29.** See note 4 *supra.*

**30.** See note 10 *supra.*

services in a manner that limits or has the effect of limiting the participation of qualified handicapped persons, 45 C.F.R. § 84.-52(a).[31] The regulations promulgated under section 504 also require such recipients to provide appropriate auxiliary aids, including interpreters, to persons with impaired sensory skills where necessary to afford such persons an equal opportunity to benefit from the service in question, 45 C.F.R. § 84.52(d),[32] and to take such steps as are necessary to ensure that no handicapped student is denied the benefits of, excluded from participation in, or otherwise subjected to discrimination under the educational program operated by the recipient because of the absence of educational auxiliary aids, such as interpreters, for students with impaired sensory skills, 45 C.F.R. § 84.44(d).[33] Thus, either IDRS and Jeffers or IIT and Martin could be required to provide plaintiff with interpreter services. *E. g., Barnes v. Converse College*, 436 F.Supp. 635, 637 (D.S.C.1977).

The question then becomes who has the primary responsibility for providing the interpreter services. IIT and Martin relying upon the Analysis of the Final Regulations,

which states that it is anticipated that such an auxiliary aid will be paid for by state and private agencies,[34] contend that IDRS and Jeffers must provide the interpreter. IDRS and Jeffers, on the other hand, contend that they are precluded by sections 101(a)(8), 101(a)(12), and 103(a)(3) of the Act from providing interpreter services.

Section 101(a)(8) of the Act [35] requires each state plan to provide for the provision of vocational rehabilitation services, such as interpreter services for deaf individuals, only after full consideration of eligibility for similar benefits under any other program. The regulations promulgated under section 101(a)(8) [36] require a state plan to provide that the state agency will give full consideration to any similar benefits available to a handicapped individual under any other program to meet the cost of any vocational rehabilitation services provided to such a handicapped individual.[37] Thus, IDRS and Jeffers contend that since plaintiff is eligible for interpreter services under the program operated by IIT and Martin, they are prohibited from providing plaintiff with interpreter services. Neither the language, the purpose, nor the history of the

31. See note 11 *supra*.

32. See note 11 *supra*.

33. See note 14 *supra*.

34. See note 15 *supra*.

35. See note 17 *supra*.

36. 45 C.F.R. § 1361.45(b) provides in pertinent part:

(1) The State plan shall provide that, in all cases, the State agency will give full consideration to any similar benefits available to a handicapped individual under any other program to meet, in whole or in part, the cost of any vocational rehabilitation services provided to such a handicapped individual ....

. . . . .

(3) The State plan shall provide that when, and to the extent that, an individual is eligible for such similar benefits, such benefits will be utilized insofar as they are adequate, and do not interfere with achieving the rehabilitation objective of the individual.

37. The plan adopted by the state of Illinois complies with these requirements. Section 6.4 provides:

6.4 *Similar benefits*

(a) *VR services for which consideration of similar benefits is required*

The designated State unit will fully consider any similar benefits available to the handicapped individual under any other program to meet, in whole or in part, the cost of VR services provided to the individual including services provided under an extended evaluation and training or training services in institutions of higher education except the following: (1) evaluation of rehabilitation potential; (2) counseling, guidance, and referral; (3) vocational and other training services including personal and vocational adjustment training, books, tools, and other training materials which are not provided in institutions of highe · education; (4) services to members of a handicapped individual's family; (5) placement; and (6) postemployment services.

. . . . .

(c) *Adequacy of similar benefits*

To the extent that an individual is eligible for such similar benefits, they will be used insofar as they are adequate and do not interfere with achieving the rehabilitation objective of the individual.

Act support this contention of IDRS and Jeffers.

"The starting point in every case involving construction of a statute is the language itself." *Southeastern Community College v. Davis*, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979) (quoting *Blue Chip Stamps v. Manor Drug. Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)). Section 101(a)(8) requires state agencies which administer vocational rehabilitation programs to provide interpreter services for deaf individuals only "after full consideration of eligibility for similar benefits under any other program . . . ." Thus, state agencies which administer vocational rehabilitation programs do not have to provide interpreter services if a college or university is another "program". Within the context of section 101, it appears that "program" refers to vocational rehabilitation programs, not educational programs.[38]

The purpose of the Act, which is set forth in section 2 of the Act, 29 U.S.C. § 701, supports this conclusion. Section 2 provides:

> The purpose of this chapter is to develop and implement, through research, training, services, and the guarantee of equal opportunity, comprehensive and coordinated programs of vocational rehabilitation and independent living.

Thus, the Act is intended to authorize programs which provide for vocational rehabilitation services.

The legislative history for section 101(a)(8) provides in pertinent part:

> The plan must assure that the State will provide the. vocational rehabilitation services identified in section 103(a)(1) through (3), and provide the remainder of such services after full consideration of eligibility for such services under other programs . . . . S.Rep.No. 93–318, 93rd Cong., 1st Sess. ——, *reprinted in* [1973]

U.S.Code Cong. & Ad.News, pp. 2076, 2129.

Since the legislative history merely paraphrases section 101(a)(8), it is necessary to look to the predecessors of section 101(a)(8).

The Vocational Rehabilitation Act Amendments of 1943, ch. 190, §§ 1–11, 57 Stat. 374–380 (1943) (the "1943 Amendments"), which re-enacted the Vocational Rehabilitation Act of June 2, 1920, ch. 219, §§ 1–7, 41 Stat. 735–737 (1919–1921), first introduced the "similar benefits" language. Section 3 of the 1943 Amendments provided in pertinent part:

> (a) From the sums made available pursuant to section 2, the Secretary of the Treasury shall pay to each State which has an approved plan for vocational rehabilitation, for each quarter or other shorter payment period prescribed by the Administrator, the sum of amounts he determines to be—
>
> . . . . .
>
> (3) one-half of necessary expenditures under such plan in such period (exclusive of administrative expense) for rehabilitation services specified in subparagraphs (A), (B), (C), (D), and (E), to disabled individuals (not including war disabled civilians) found to require financial assistance with respect thereto, *after full consideration of the eligibility of such individual for any similar benefit by way of pension, compensation, or insurance* . . . . (emphasis added).

The legislative history to section 3 of the 1943 Amendments stated: ˙

> Steps were taken to assure use of Federal funds for rehabilitation services only when necessary. Thus (except for war-disabled veterans certified to the State) eligibility for maintenance, physical restoration, and prosthetic appliances is limited to cases where a financial need for

**38.** All parties contend that the use of the word "program" in other sections of the Act support their positions. For example, section 121, 29 U.S.C. § 741(b), refers to "any other federally financed program" and section 504, 29 U.S.C. § 794, refers to "any program or activity receiv-

ing Federal financial assistance." Since the word "program" has many different uses within the Act, the court limits its discussion to the word "program" as it is used within section 101(a)(8).

such services is found *after full consideration of all other benefits available to the individuals.* H.R.Rep.No. 426, 78th Cong., 1st Sess. ——, *reprinted in* [1943] U.S.Code Cong.Serv., pp. 2.134, 2.139 (emphasis added).

The 1943 Amendments were amended in their entirety by the Vocational Rehabilitation Amendments of 1954, ch. 655, §§ 1–13, 68 Stat. 652–662 (1954) (the "1954 Amendments"). Section 11(a) of the 1954 Amendments provided in pertinent part:

> The term "vocational rehabilitation services" means diagnostic and related services (including transportation) incidental to the determination of eligibility for and the nature and scope of services to be provided; training, guidance and placement services for physically handicapped individuals; and, in the case of any such individual found to require financial assistance with respect thereto, *after full consideration of his eligibility for any similar benefit by way of pension, compensation, and insurance,* any other goods and services necessary to render such individual fit to engage in a remunerative occupation (including remunerative homebound work) .... 68 Stat. at 659 (emphasis added).

That section 3 of the 1943 Amendments is substantially incorporated into section 11(a) of the 1954 Amendments is confirmed by the legislative history to section 11(a):

> The term "vocational rehabilitation services" is defined in subsection (a) of section 10 [section 11 of the 1954 Amendments]. Except for substantial liberalizations referred to below, the definition of "vocational rehabilitation services", contained in subsection (a), paragraphs (1) through paragraph (6) thereof, is substantially similar to the provisions of section 3(a) of the existing act to the extent that the latter section outlines the various categories of rehabilitation services for which Federal reimbursement is available under the conditions specified therein. S.Rep.No. 1626, 83rd Cong., 2d Sess. ——,

*reprinted in* [1954] U.S.Code Cong. & Ad. News, pp. 2862, 2885.

The legislative history regarding the similar benefits provision stated:

> The term also includes, in the case of any disabled individual found to require financial assistance with respect thereto, *after full consideration of his eligibility for any similar benefit by way of pension, compensation, and insurance,* any other goods and services necessary to render such individual fit to engage in a remunerative occupation. S.Rep.No. 1626, 83rd Cong., 2d Sess. ——, *reprinted in* [1954] U.S.Code Cong. & Ad.News at 2885–86 (emphasis added).

The 1954 Amendments were amended in part by the Vocational Rehabilitation Amendments of 1968, P.L.No. 90–391, 82 Stat. 297–306 (1968) (the "1968 Amendments"). In the 1968 Amendments section 11(a) was amended to read as follows:

> (1) The term "vocational rehabilitation services" means the following services:
>
> . . . . .
>
> (2) Such term also includes, *after full consideration of eligibility for any similar benefit by way of pension, compensation, and insurance,* the following services and goods provided to, or for the benefit of, a handicapped individual: .... 82 Stat. at 301 (emphasis added).

The types of programs specified in the predecessors to section 101(a)(8) were programs designed to provide vocational rehabilitation services. Unless the context indicates otherwise, words or phrases in a provision that were used in a prior act pertaining to the same subject matter will be construed to be used in the same sense. 2A C. Sands, Statutes and Statutory Construction § 51.02, at 290 (1973). Since section 101(a)(8) must be interpreted as only requiring consideration of other benefit programs which provide or pay for vocational rehabilitation services, IDRS and Jeffers are not precluded by section 101(a)(8) of the Act from providing interpreter services.[39]

---

**39.** Given the court's conclusion regarding section 101(a)(8) of the Act, it need not decide whether "any other program" includes programs operated by both public and private agencies.

Section 101(a)(12) of the Act[40] and the regulation promulgated thereunder[41] require each state plan to provide that, in the provision of vocational rehabilitation services, maximum utilization shall be made of vocational or technical training facilities or other appropriate resources in the community.[42] IDRS and Jeffers contend that the duty of IIT and Martin to provide plaintiff with interpreter services is an "other appropriate resource in the community" and therefore that they are prohibited from providing plaintiff with interpreter services. Plaintiff contends that the phrase "other appropriate resources in the community" refers to resources whose major function is the provision of vocational rehabilitation services and therefore that IDRS and Jeffers are not prohibited from providing plaintiff with interpreter services.

The language and the purpose of the Act support plaintiff's contention. When read in conjunction with section 2,[43] section 101(a)(12)(B)[44] and the other subsections of section 101(a) of the Act, it appears that section 101(a)(12) contemplates community resources whose major function is to provide vocational rehabilitation services, not to provide postsecondary educations.

■ The legislative history for section 101(a)(12) supports this conclusion. The legislative history provides:

The plan must require maximum utilization of public or other vocational or technical training facilities and *resources in the community for the provision of services.* S.Rep.No. 93–318, 93rd Cong., 1st Sess. ——, *reprinted in* [1973] U.S. Code Cong. & Ad.News at 2129 (emphasis added).

Since section 101(a)(12) must be interpreted as requiring maximum utilization of resources in the community which provide vocational rehabilitation services, IDRS and Jeffers are not precluded by section 101(a)(12) of the Act from providing plaintiff with interpreter services.

Section 103(a)(3) of the Act[45] and the regulation promulgated thereunder[46] provide that vocational rehabilitation services include vocational and other training services for handicapped individuals provided that training services in institutions of higher education (universities, colleges, and community/junior colleges) will not be paid for with funds provided under title I unless maximum efforts have been made to secure grant assistance from other sources to pay such training.[47] IDRS and Jeffers contend that interpreter services are training services and therefore that they are prohibited from providing plaintiff with interpreter services. However, the question which must be answered first is whether, assum-

---

**40.** See note 17 *supra.*

**41.** 45 C.F.R. § 1361.52 provides:
The State plan shall provide that, in the provision of vocational rehabilitation services, maximum utilization will be made of public or other vocational or technical training facilities or other appropriate resources in the community.

**42.** The plan adopted by the state of Illinois complies with these requirements. Section 6.4(d) provides:
6.4 *Similar benefits*

(d) *Maximum utilization of community resources*
In providing VR services, maximum utilization will be made of public or other vocational or technical training facilities or other appropriate resources in the community.

**43.** Section 2 is set forth on page 1253 *supra.*

**44.** See note 17 *supra.*

**45.** See note 18 *supra.*

**46.** 45 C.F.R. § 1361.71(b) provides in pertinent part:
Federal financial participation will also be available in expenditures made under the State plan for providing the following vocational rehabilitation services to individuals:

(3) Vocational and other training services, including personal and vocational adjustment, books, tools, and training materials: *Provided,* That no training or training services in institutions of higher education (universities, colleges, community/junior colleges) shall be paid for with funds under this part unless maximum efforts have been made by the State agency to secure grant assistance in whole or in part from other sources to pay for such training or training services
. . . .

**47.** Section 6.4(a) of the State plan complies with these requirements. See note 37 *supra.*

ing *arguendo* that interpreter services are training services, institutions of higher education constitute "other services." The language and the history of section 103(a)(3) indicate that they do not.

The phrase "other sources" must be read in conjunction with the phrase "grant assistance." When so read, section 103(a)(3) suggests that "other sources" refers to means of obtaining/public or private funds other than those provided by institutions of higher education.

■ This construction is supported by the legislative history to section 103(a)(3) which provides:

The Committee also limited the use of program funds for individuals who are pursuing higher education paid for by this program to those for whom all alternative means of funding have been sought and were not available. The Committee feels that the costs for instruction at colleges should be borne by some other source of funds if in any way possible, and points out that a substantial new student assistance program is available through P.L. 92–318, the Education Amendments of 1972 [amending the Higher Education Act of 1965, 20 U.S.C. §§ 1001–1145c]. Statistics provided to the Committee show that many States do not limit the amount that may be spent on a handicapped individual's higher education, thus substantially diminishing basic program monies available for other

services, especially those needed by individuals with more severe handicaps. The Committee does not wish to limit a handicapped individual's opportunity to pursue postsecondary education, but does believe that other sources of funds should be explored with diligence. S.Rep.No. 93–318, 93rd Cong., 1st Sess. ——, *reprinted in* [1973] U.S.Code Cong. & Ad.News at 2099.

The student assistance program available through the Higher Education Act of 1965, in addition to making funds available directly to students, provides for payments to the states to assist them in making financial aid available to students of exceptional need who, for lack of such a grant, would be unable to obtain the benefits of a postsecondary education and provides assistance to institutions of higher education. 20 U.S.C. § 1070.[48] Thus, institutions of higher education do not constitute "other sources" and IDRS and Jeffers are not precluded by section 103(a)(3) of the Act from providing interpreter services.[49]

■ Since IDRS and Jeffers are not precluded by sections 101(a)(8), 101(a)(12), and 103(a)(3) of the Act from providing interpreter services and since the Analysis of the Final Regulations[50] indicates that the bulk of auxiliary aids are to be paid for by state and private agencies, not by colleges or universities, the court concludes that IDRS and Jeffers have the primary responsibility for providing interpreter services for deaf

---

**48.** 20 U.S.C. § 1070 provides in pertinent part:

(a) It is the purpose of this part, to assist in making available the benefits of postsecondary education to qualified students in institutions of higher education by—

(1) providing basic educational opportunity grants (hereinafter referred to as "basic grants") to all eligible students;

(2) providing supplemental educational opportunity grants (hereinafter referred to as "supplemental grants") to those students of exceptional need who, for lack of such a grant, would be unable to obtain the benefits of a postsecondary education;

(3) providing for payments to the States to assist them in making financial aid available to such students; [and]

. . . . .

(5) providing assistance to institutions of higher education.

**49.** Even if institutions of higher education do constitute "other sources," the court does not agree with IDRS and Jeffers that interpreter services are training services. Section 103(a)(6) of the Act provides that vocational rehabilitation services include interpreter services for deaf individuals. Since interpreter services appear in a subsection separate from training services, training services could not include interpreter services. "General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment." *In re Thornhill Way I,* 636 F.2d 1151, at 1156 (7th Cir. 1980) (quoting *D. Ginsberg & Sons, Inc. v. Popkin,* 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704 (1932)).

**50.** See note 15 *supra.*

individuals who are eligible for vocational rehabilitation services.[51] Therefore, with respect to section 504 of the Act, the motions of plaintiff and IIT and Martin for summary judgment are granted and the motion of IDRS and Jeffers for summary judgment is denied.

With respect to the cross-claim of IIT and Martin against IDRS and Jeffers for costs incurred by IIT in providing interpreter services to plaintiff, IDRS and Jeffers contend that IIT and Martin do not have standing to claim that IDRS has breached its duty under section 504 by failing to provide plaintiff with interpreter services and that a claim for monetary relief against them is barred by the eleventh amendment. IIT and Martin contend that since there is a subrogation relationship between IIT and plaintiff, IIT can assert against IDRS the same claim for money damages which plaintiff would have asserted had he paid for those services himself and that IDRS and Jeffers have waived their immunity from suit under the eleventh amendment.

 Under the eleventh amendment,[52] a private person may not sue a state in a federal court without its consent, whether or not the plaintiff is a citizen of that state. *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974) (citing *Parden v. Terminal Railway*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Great Northern Life Insurance Co. v. Read*, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *Duhne v. New Jersey*, 251 U.S. 311, 40 S.Ct. 154, 64 L.Ed. 280 (1920); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). Where state officials are sued in their official capacities for retroactive

money damages by private parties in a federal court, suit still is barred by the eleventh amendment because the liability is one which must be paid from public funds in the state treasury. *Edelman v. Jordan*, 415 U.S. at 663, 94 S.Ct. at 1355 (citing *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945)).

 Furthermore, a state does not waive its sovereign immunity and consent to the bringing of a suit by accepting federal funds unless Congress intended to abrogate the immunity conferred by the eleventh amendment, *i. e.*, unless the Congressional enactment by its terms authorized suit by designated plaintiffs against a general class of defendants which literally included states or state instrumentalities. *Edelman v. Jordan*, 415 U.S. at 672, 94 S.Ct. at 1360. However, states are not shielded from money judgments by the eleventh amendment when suit is brought under civil rights statutes enacted by Congress pursuant to its powers under the fourteenth amendment because the eleventh amendment and the principle of state sovereignty that it embodies are limited by the enforcement provisions of section five of the fourteenth amendment.[53] *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 561, 49 L.Ed.2d 614 (1976). Section five of the fourteenth amendment grants Congress authority to enforce "by appropriate legislation" the substantive provisions of the fourteenth amendment, which themselves embody significant limitations on state authority. *Id.* Although section 504 was enacted pursuant to the fourteenth amendment, the Act does not contain the requisite explicit Congressional authorization to enable individuals to bring suits against the states.[54] *Stubbs v.*

---

**51.** Since the court has held that either IDRS and Jeffers or IIT and Martin could be liable under section 504 of the Act and that IDRS and Jeffers are primarily responsible for providing the interpreter services, the court need not address the equal protection issue.

**52.** See note 16 *supra.*

**53.** Section 5 of the fourteenth amendment provides: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

**54.** The court is aware that the Act has been amended to provide that the remedies set forth

in title VI shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 504 of the Act. Section 505 of the Act, 29 U.S.C. § 794a. However, since title VI does not indicate that Congress intended to permit retrospective relief despite the eleventh amendment, *cf. Wade v. Mississippi Cooperative Extension Service*, 424 F.Supp. 1242, 1254–56 (N.D.Miss. 1976) (Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988), this amendment does not cause the court to change its conclusion.

*Kline,* 463 F.Supp. 110, 116 (W.D.Pa.1978). Therefore, the eleventh amendment is a bar to the action of IIT and Martin against IDRS and Jeffers [55] and, with respect to the cross-claim, the motion of IDRS and Jeffers for summary judgment is granted and the motion of IIT and Martin for summary judgment is denied.

Accordingly, the motion of plaintiff for summary judgment is granted with respect to section 504 of the Act and is denied with respect to title I of the Act, the motion of IDRS and Jeffers for summary judgment is granted with respect to title I of the Act and the cross-claim and is denied with respect to section 504 of the Act, and the motion of IIT and Martin for summary judgment is granted with respect to section 504 of the Act and is denied with respect to the cross-claim.[56]

It is so ordered.

---

**55.** Since the court has held that the eleventh amendment bars an action for retroactive money damages against IDRS and Jeffers, it need not consider the issue of whether IIT and Martin have standing.

**56.** IDRS and Jeffers, their agents, employees, successors in office, and all persons acting in concert with them, are enjoined from refusing to provide interpreter services to plaintiff at their expense and, if plaintiff ceases to be eligible for vocational rehabilitation services, IIT and Martin, their agents, employees, successors in office, and all persons acting in concert with them, are enjoined from refusing to provide interpreter services to plaintiff at their expense.