**Gerald J. RYANS, Plaintiff,**

v.

**NEW JERSEY COMMISSION FOR THE BLIND AND VISUALLY IMPAIRED and Norma F. Krajczar, Defendants.**

**Civ. A. No. 81–3444.**

United States District Court, D. New Jersey.

July 6, 1982.

Visually Impaired and Norma Krajczar, the Commission's Executive Director, alleging that defendants have unlawfully denied him rehabilitative services and benefits to which he is entitled under Title I of the Rehabilitation Act of 1973, 29 U.S.C. §§ 720—750. The matter is now before the court on motions which raise important questions of federal jurisdiction and procedure relevant to plaintiff's right to proceed with the action in this forum.

### 1. *Background*

The parties are in agreement on the essential background facts.

Plaintiff is legally blind and has been a client of the New Jersey Commission for the Blind and Visually Impaired at periodic intervals for a number of years. He most recently applied to the Commission for rehabilitative services in 1978, and over the course of the next three years received vocational training and assistance in seeking employment.

During the summer of 1981, plaintiff became embroiled in a dispute with the Commission over his cooperation with the authorities in charge of his program. In letters dated August 15, 1981 and September 2, 1981, defendant Krajczar notified plaintiff that the Commission had established certain conditions to his continued participation in the program, including his release of medical records for use by the Commission, his strict adherence to the recommendations of his professional counsellors and the cessation of phone calls to others for help in dealing with the Commission.

On October 1, 1981, plaintiff was afforded an informal "administrative review" with respect to the conditions set forth in defendant Krajczar's letters. Plaintiff indicated during the review that he did not intend to comply with the conditions. The presiding agency official then recommended in a written opinion that "the agency stick to its guns and that the steps outlined be followed absolutely before further work is attempted with this man." (Defendants' Exhibit Da–6).

Vincent E. Halleran, Jr., Freehold, N. J., for plaintiff.

Valerie L. Egar, Deputy Atty. Gen., State of N. J., Trenton, N. J., for defendants.

## OPINION

DEBEVOISE, District Judge.

Plaintiff, Gerald J. Ryans, a handicapped individual, brings this action against the New Jersey Commission for the Blind and

According to defendants, plaintiff was informed in a letter dated September 17, 1981 that he was entitled to a "fair hearing" following an adverse agency determination at the administrative review level. (Affidavit of Francis A. Rochford, ¶ 17). Plaintiff did not, however, request such a "fair hearing" and none was held. By letter of October 15, 1981, defendant Krajczar notified plaintiff that his file had been closed and further services would be terminated due to his "failure to cooperate." (Defendants' Exhibit Da–8).

On November 4, 1981, plaintiff filed the present action. Contending that defendants had violated his rights under § 103 of the Rehabilitation Act of 1973, 29 U.S.C. § 723, plaintiff sought an order requiring that his file with the Commission be reopened, an order requiring defendants to furnish him with a CCTV Video Tech Machine for use as a reading aid, money damages and the costs of suit.

In a motion originally returnable May 17, 1982, defendants moved to dismiss plaintiff's complaint on the ground that he had failed to exhaust administrative remedies. By letter of May 13, 1982, I notified the parties that certain issues raised by the complaint had not been adequately addressed and adjourned the motion for submission of further briefing. In particular, I requested the parties to brief the issue whether, in view of the fact that Congress had provided no express right of action for judicial enforcement of Title I of the Rehabilitation Act of 1973, plaintiff was entitled to assert an implied private right of action or, alternatively, an action pursuant to 42 U.S.C. § 1983. The parties have complied with my request, and I am now prepared to resolve all outstanding motions.

The following motions are now before the court. Defendants move to dismiss the complaint on the ground that no private right of action exists to enforce the provisions of 29 U.S.C. § 723 or, in the alternative, on the ground that plaintiff has failed to exhaust state and federal administrative remedies. In addition, defendants move to dismiss the action as to defendant Krajczar on the ground that she is immune from suit under the New Jersey Tort Claims Act, N.J.S.A. 59:3–2(b). Plaintiff cross-moves for leave to file an amended complaint setting forth an additional count under the Privacy Act of 1974, 5 U.S.C. § 552a.

### 2. Private Right of Action

The federal statute at issue in this action, Title I of the Rehabilitation Act of 1973, contains no express provision authorizing an aggrieved handicapped individual, such as plaintiff, to institute a court action for the purpose of enforcing its provisions.[1] If plaintiff is to pursue the action, therefore, it must be determined either that he is entitled to an implied private right of action under the Act or, alternatively, a private right of action under 42 U.S.C. § 1983, the general federal statute authorizing actions against state officials for violations of federal laws and the Constitution.

### A. Implied Private Right of Action

Where Congress has passed a statute creating rights and obligations, yet remained silent as to whether those rights and obligations can be judicially enforced, the courts have traditionally inquired whether Congress, despite the absence of an explicit statement, impliedly intended a private right of action to exist. See, e.g., Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

In the leading case of Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court identified four considerations relevant to a determination whether

1. The Act does provide for judicial review of a decision by the Commissioner of the Rehabilitation Services Administration reducing or terminating federal funds on account of a State's noncompliance with the Act by "[a]ny State which is dissatisfied" with the decision. 29 U.S.C. § 721(d). The focus of the private right of action inquiry, however, is whether the rights and obligations of the Act may be "judicially enforced by a particular 'class of litigants,'" in this case handicapped individuals themselves. Davis v. Passman, 442 U.S. 228, 238, 99 S.Ct. 2264, 2273, 60 L.Ed.2d 846 (1979).

an implied private right of action should be found, only one of which directly involved an investigation into congressional intent.[2] The Court has emphasized in more recent cases, however, that "the question whether a statute creates a private right of action is ultimately 'one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law.'" *Universities Research Association v. Coutu*, 450 U.S. 754, 770, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981), *quoting Touche Ross & Co. v. Redington*, 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979); *see also Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981). The key question to be determined here, therefore, is whether the nature of Title I and the circumstances under which it was passed indicate an intention on the part of Congress to permit handicapped individuals to assert a private right of action directly under the Act.[3]

■ In the only reported opinion to date expressly analyzing the question, *Jones v. Illinois Department of Rehabilitation Services*, 504 F.Supp. 1244 (N.D.Ill.1981), Judge Flaum concluded after an extensive survey of the statutory provisions, that it was not Congress' intention to extend handicapped individuals a right of action to enforce the provisions of Title I.[4] I find the reasoning of the *Jones* opinion persuasive and believe that it correctly states the law.[5]

I also note an additional basis for concluding that Congress did not intend to create a private right of action directly under Title I. In *Jones*, Judge Flaum based his analysis primarily upon the structure of the statute, finding "no indication whatever in the legislative history of title I which suggests a Congressional intention to create or deny a private cause of action." *Id.* at 1249. I believe, however, that there is legislative history which sheds light on the question.

In the original version of the Act, as passed in 1973, Congress provided no procedures, administrative or otherwise, by which a handicapped individual denied services or otherwise aggrieved within the meaning of Title I could obtain review. Pub.L.No.93–112, § 103, 87 Stat. 355 (1973). When Congress amended the Act in 1978, however, it expressly added administrative procedures by which a handicapped individual could seek review of "determinations made by the rehabilitation counselor or coordinator." Pub.L.No.95–602, § 103, 92 Stat. 2959 (1978) (codified at 29 U.S.C. § 722(d)). The method by which Congress arrived at this amendment indicates an intention on its part not to include a judicial remedy.

The Senate's proposed version of the 1978 amendments contained a provision which would have afforded any individual with a

---

2. The four considerations are: (1) whether plaintiff is "one of the class for whose *especial* benefit the statute was enacted"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) whether it is "consistent with the underlying purposes of the legislative scheme to imply such a remedy"; and (4) whether the cause of action [is] one traditionally relegated to state law." 422 U.S. at 78, 95 S.Ct. at 2087 (emphasis in original).

3. The Supreme Court has noted that "[c]ongressional intent may be discerned by looking to the legislative history and other factors: *e.g.*, the identity of the class for whose benefit the statute was enacted, the overall legislative scheme, and the traditional role of the states in providing relief." *Texas Industries, supra*, at 639, 101 S.Ct. at 2066.

4. In *Schornstein v. N.J. Division of Vocational Rehabilitation*, 519 F.Supp. 773 (D.N.J.1981), Judge Stern appears to have recognized a private right of action to enforce the provisions of Title I *sub silentio* while expressly disavowing any intention of doing so. "The question whether Title I gives rise to a private cause of action," he stated, "is not before the Court." *Id.* at 777, n. 12. He nevertheless ordered the state agency to provide plaintiff, a deaf student, with interpreter services in reliance upon 29 U.S.C. § 723(a). For the reasons stated in the following section, I believe the case was correctly decided, although the method by which the decision was reached was unclear.

5. The possibility of a private right of action under § 1983 was not raised in the *Jones* case. My adoption of its holding is limited to the implied private right of action issue.

complaint relating to the provision of Title I services a right to an administrative hearing, an appeal of the hearing decision to a three-man arbitration panel and "a subsequent civil action for such relief [with the exception of monetary damages] as the court may determine is appropriate." House Conf.Rep.No.95–1780, 95th Cong., 2d Sess., *reprinted in* [1978] U.S.Code Cong. & Ad.News 7375, 7379. The House version, on the other hand, contained no provision for review procedures at all. *Id.* At conference, a set of procedures was agreed upon which represented an obvious compromise between the House and Senate positions. As presently codified, the statute retains a portion of the administrative procedures originally proposed in the Senate bill. Noticeably absent from the compromise version, however, is any reference to a civil action remedy. *See* 29 U.S.C. § 722(d). While this scant bit of legislative history may not alone be dispositive, it does tend to reinforce the proposition that Congress did not contemplate a private right of action under the statute. *Cf. Universities Research Association v. Coutu, supra,* 450 U.S. at 778, 101 S.Ct. at 1465.

For the reasons expressed in the *Jones* opinion, and for the additional reasons stated above, I conclude that plaintiff is not entitled to assert his claims by way of an implied private right of action under Title I of the Rehabilitation Act of 1973.

### B. Right of Action Under § 1983

Even though plaintiff cannot assert an implied private right of action under Title I

itself, he may nevertheless be entitled to enforce the provisions of the Act against defendants under 42 U.S.C. § 1983.[6]

In *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court squarely held that § 1983, in accordance with its literal language, "broadly encompasses violations of federal statutory as well as constitutional law."[7] *Id.* at 4, 100 S.Ct. at 2503. Applying this view, it permitted an AFDC beneficiary to sue state officials under § 1983 to compel their compliance with the federal Social Security Act, even though Congress had created no private right of action in the Act itself to enforce the provision in question.[8]

Since *Thiboutot,* the Supreme Court has created two exceptions to the general rule that § 1983 is available for the enforcement of federal statutes against state officials. A § 1983 action is not available if: (1) the federal statute in question creates no enforceable "rights," or (2) Congress has created exclusive remedies for the enforcement of the statute which explicitly or implicitly preclude any other form of action. *See Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Pennhurst State School v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Because plaintiff asserts the violation of a federal statute by persons acting under color of state law, he meets the basic prerequisites for asserting a § 1983 action. The question which must be

---

**6.** 42 U.S.C. § 1983 provides that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution *and laws,* shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." (Emphasis added).

**7.** In a number of earlier cases, the Supreme Court had relied on § 1983, either explicitly or implicitly, to entertain challenges to state compliance with *federal* statutes, particularly the Social Security Act. *See, e.g., Edelman v. Jor-*

*dan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974); *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). *Thiboutot,* however, was the first case to directly address the issue and unequivocally extend § 1983's coverage to any federal statute.

**8.** *Thiboutot* involved a § 1983 action brought in a state court. At the time, plaintiffs could not have brought their action in the federal district court because of the $10,000 amount in controversy requirement. Since the amount in controversy requirement has been abolished by Congress in federal question cases, P.L. 96–486, § 4, 94 Stat. 2370 (1980), it poses no obstacle here.

determined is whether he is precluded from asserting such a right of action by either of the exceptions articulated in *Sea Clammers* and *Pennhurst.*

 There can be little doubt that the statutory provisions upon which plaintiff places primary reliance, 29 U.S.C. §§ 722 and 723, create rights enforceable under § 1983.

In *Pennhurst*, the Supreme Court evinced deep concern over the consequences which might ensue if it construed such open-ended and "indeterminate" statutory phrases as " 'appropriate' treatment in the 'least restrictive' setting" to confer enforceable rights upon mentally retarded individuals. It was particularly disturbed by the fact that Congress had granted the state responsible for carrying out the program a sum "woefully inadequate to meet the enormous financial burden" which strict enforcement of the statutory terms would apparently entail. *Id.* at 24, 101 S.Ct. at 1543. Furthermore, it noted that Congress had fallen "well short of providing clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply with" the statute's potentially expensive terms. Consequently, it concluded that the "Bill of Rights" for the mentally retarded set forth in § 111 of the Developmentally Disabled and Bill of Rights Act, did not create "rights and obligations," such as might be enforced under § 1983, but indicated a mere "congressional preference for certain kinds of treatment." *Id.* at 18–19, 101 S.Ct. at 1540.

In Title I of the Rehabilitation Act, by contrast, Congress set forth quite specific rights for the handicapped, as well as correlative obligations on the part of the states. 29 U.S.C. § 722, for example, explicitly requires that a participating state develop jointly with each handicapped individual found to be eligible an individualized written rehabilitation program. The written program must "set forth the terms and conditions, as well as the rights and remedies, under which goods and services will be provided to the individual." 29 U.S.C. § 722(a). It must also include, among other things, "a statement of the *specific* vocational rehabilitation services to be provided" and "the projected date for the initiation and the anticipated duration of each such service." 29 U.S.C. § 722(b) (emphasis added).

In 29 U.S.C. § 723, the Act specifies a number of highly specific benefits and services which must be provided to qualified individuals including, among others, "counseling, guidance, referral and placement services," "books," "prosthetic and orthotic devices," "eyeglasses" and "diagnosis and treatment for mental and emotional disorders." In order to fund such services, Congress has appropriated for use by the states amounts closely approaching $1 billion per year. 29 U.S.C. § 720. The federal government is obligated, in most instances, to bear 80% of the program's cost. 29 U.S.C. § 706(6).

Clearly, the practical concerns expressed by the Supreme Court in *Pennhurst* do not apply to Title I of the Rehabilitation Act. Far from imposing indeterminate obligations upon the states without substantial funding, the Act creates quite specific rights and obligations backed up by generous federal funding, much like the AFDC program at issue in *Thiboutot.* Under the circumstances, the only tenable conclusion is that Title I creates enforceable "rights" within the meaning of § 1983.

Whether the remedies now provided handicapped individuals in Title I should be deemed to be exclusive is a more difficult question. Where Congress has expressed a clear intent to create exclusive remedial procedures, the courts have not hesitated to give the congressional mandate effect. *See, e.g., Adickes v. Kress & Co.,* 398 U.S. 144, 150–51, n. 5, 90 S.Ct. 1598, 1604–1605, n. 5, 26 L.Ed.2d 142 (1970) (Exclusive remedies provided under the Public Accommodations provisions of the Civil Rights Act of 1964 preclude a damages action under § 1983); *cf. Califano v. Sanders,* 430 U.S. 99, 103, n. 3, 97 S.Ct. 980, 983, n. 3, 51 L.Ed.2d 192 (1977) (Exclusive remedies provided under section 205(h) of the Social Security Act preclude review under the Ad-

ministrative Procedure Act). The difficulty arises when, as here, Congress has not spoken clearly and efforts must be made to discern its underlying intent from the legislative history and surrounding circumstances.

At the outset, it should be noted that the analysis required to determine the exclusivity question is similar, but not identical, to that involved in determining the existence of an implied private right of action. A court will not presume to find a private right of action in a statute silent as to remedy unless there is some evidence to indicate that the legislature impliedly intended one to exist. *E.g., Texas Industries, Inc. v. Radcliff Materials, Inc., supra.* In determining the exclusivity question, on the other hand, the court must presume a § 1983 right of action to exist unless there is evidence in the underlying statute which suggests an intent on the part of Congress to *foreclose* such an action. *See Sea Clammers, supra.* It is quite possible to find in the same statute, therefore, the absence of any intention on the part of Congress to either create an implied right of action or to preclude the assertion of a § 1983 action. In such a case, as in *Thiboutot,* an individual aggrieved under the terms of the statute would be entitled to bring a § 1983 action against state officials but not private parties.[9]

In the present case, I discern no intention on the part of Congress to foreclose a § 1983 remedy for the enforcement of Title I. While the legislative history referred to in the previous section indicates that Congress chose not to include a civil action remedy in Title I itself, it does not suggest that Congress intended to make administrative remedies exclusive. The conference committee might equally well have chosen not to include a judicial remedy in 29 U.S.C.

§ 722 because it assumed that a § 1983 action was already available and would suffice.

I do not believe that the overall statutory scheme set forth in Title I requires a different result. In *Sea Clammers,* the Supreme Court found a § 1983 action precluded where the underlying statutes contained their own highly comprehensive set of enforcement remedies, including special citizen-suit provisions permitting private persons to sue in court for injunctive relief. Were the Court to have permitted a parallel § 1983 action, litigants could then have bypassed the procedural checks and balances, including a requirement of 60 days notice to potential defendants, which Congress had carefully made a part of the enforcement scheme. Under the circumstances, the Court concluded that a § 1983 remedy would be inconsistent with the statutory scheme and that Congress must have intended the acts' own provisions to be exclusive.

Here, on the other hand, the procedures set forth in 29 U.S.C. § 722(d) and a civil action under § 1983 would not be inconsistent but complimentary. If one assumes, as I do in the following section, that administrative remedies must be exhausted as a prerequisite to a § 1983 action for the vindication of federal *statutory* rights, then the availability of a § 1983 remedy will not interfere with the administrative remedies now provided in the statute. An aggrieved individual will be afforded access to the court only after all state agency procedures have been completed.[10]

The statute at issue in this case, insofar as it provides for state administrative procedures but contains no judicial remedies, is virtually indistinguishable from the AFDC provisions of the Social Security Act at issue in *Thiboutot.* In order to participate

9. Such a disparity is not unusual. Many constitutional claims are now brought against state officials under § 1983, by virtue of the Fourteenth Amendment, which could not be brought against private individuals.

10. According to defendants, plaintiff is entitled to judicial review of his claims, following a final agency decision, in the Superior Court of

New Jersey, Appellate Division, pursuant to N.J.Ct.R. 2:2–3(a), even if he is not provided access to this forum. Plaintiff has a substantial interest, however, in fully litigating his federal claims in federal court. *See England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

in the AFDC program, a state must "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for aid is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 602(a)(4). Despite the existence of these federally mandated state administrative procedures, the Supreme Court found a § 1983 remedy available in *Thiboutot* for judicial enforcement of the provisions of the Act. If *Thiboutot* has any remaining vitality after *Pennhurst* and *Sea Clammers*, it all but dictates the conclusion that the statutory scheme created by Congress in Title I does not, by its nature, preclude a § 1983 remedy.[11]

Viewing Title I as a whole, I find no Congressional intent to foreclose the assertion of a § 1983 action by a handicapped individual denied benefits under the program. The Supreme Court has held that courts should be "most reluctant to assume Congress has closed the avenue of effective judicial review to those individuals most directly affected by the administration of its program." *Rosado v. Wyman*, 397 U.S. 397, 420, 90 S.Ct. 1207, 1221, 25 L.Ed.2d 442 (1970). Heeding this mandate, I conclude that plaintiff is entitled to assert his Title I claims by way of an action under § 1983.

### 3. *Exhaustion of Administrative Remedies*

Defendants next contend that, even if plaintiff is entitled to assert a private right of action under § 1983, the action must nevertheless be dismissed because plaintiff has not exhausted available state remedies.

It has long been held by the Supreme Court and the Court of Appeals in this Circuit that, as a general proposition, administrative remedies need not be exhausted as a prerequisite to an action under § 1983. *See, e.g., McNeese v. Board of Education*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 662 (1963); *United States ex rel.*

*Ricketts v. Lightcap*, 567 F.2d 1226 (3d Cir. 1977). The Supreme Court recently reaffirmed this stance in *Patsy v. Board of Regents*, —— U.S. ——, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), squarely rejecting an *en banc* decision by the Fifth Circuit that state administrative remedies, where adequate, must be exhausted by § 1983 litigants. For the reasons which follow, however, I do not believe that either *Patsy* or its forerunners govern the present case.

As the Supreme Court recognized in *Maine v. Thiboutot*, there are two very different situations in which § 1983 actions may be brought: cases charging state officials with constitutional violations and cases charging that state officials have misconstrued or failed to comply with a federal statute.

In the former situation, sound reasons can be marshalled in support of a rule exempting plaintiffs from exhausting administrative remedies. The Constitution itself neither contains its own administrative remedies nor requires the establishment of administrative remedies by the states. *Cf. Davis v. Passman*, 442 U.S. 228, 241, 99 S.Ct. 2264, 2274, 60 L.Ed.2d 846 (1979). Furthermore, Congress has indicated no intention to require exhaustion of state-created administrative remedies in § 1983 actions brought to vindicate constitutional rights. *Patsy, supra*, —— U.S. at —— –——, 102 S.Ct. at 2559–2564. Courts designated to police rights created by the Constitution, therefore, can reasonably take a dim view of administrative procedures which might have the effect of delaying the vindication of constitutional rights at best and immunizing state officials from the obligations imposed by the Constitution at worst. Unless state legislatures are to be permitted to superimpose their own procedural designs upon the "majestic simplicity" of the Constitution, the courts must remain wary of requiring exhaustion of administrative remedies.[12]

---

11. For the reasons stated in the following section, I do not believe that the possibility of an additional appeal to the federal agency under Title I creates a meaningful distinction.

12. Even though exhaustion of administrative remedies may not be required, courts may still require, as a prerequisite to the institution of suit, a controversy "ripe" for decision. This requirement, with roots in the "case or contro-

In the present case, however, the very statute which plaintiff seeks to vindicate by way of a § 1983 action *requires* the state to institute administrative review procedures. If the courts are to effectuate congressional intent, they must give effect to the entire enforcement scheme provided in the statute.[13] As has frequently been noted, there are a number of sound reasons for requiring the exhaustion of administrative remedies as a prerequisite to the initiation of a court action. Among other things, the exhaustion requirement permits the application of agency expertise, aids the development of a factual record, gives the agency an opportunity to discover and correct its own errors and obviates the need for many cases to proceed to the judicial forum at all. *See McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). It can only be assumed that when Congress makes provision for states participating in its cooperative spending programs to create administrative remedies, it intends for those remedies to be pursued.[14]

None of the Supreme Court cases traditionally relied upon for the proposition that administrative remedies need not be exhausted in § 1983 actions involved a suit for the vindication of federal statutory, as opposed to constitutional, rights.[15] Since the concerns presented by the two types of cases are altogether different, I do not believe that the decisions of either the Supreme Court or the Third Circuit Court of Appeals are controlling here. Accordingly, I conclude that where a § 1983 action is brought for the vindication of rights under a federal statute which contains its own administrative remedies, exhaustion of those administrative remedies, if they are adequate, is required.

Merely to hold that exhaustion of administrative remedies is required in statutory § 1983 cases, however, does not resolve the motion in the present case. It first must be determined whether plaintiff has in fact exhausted all adequate administrative remedies available to him.

The federal statute at issue here, 29 U.S.C. § 722(d), provides, in full, as follows:

(1) The Director of any designated State unit shall establish procedures for the review of determinations made by the rehabilitation counselor or coordinator under this section, upon the request of a handicapped individual (or, in appropriate cases, his parents or guardians). Such procedures shall include a requirement that the final decision concerning the review of any such determination be made in writing by the Director. The Director may not delegate his responsibility to make any such final decision to any other officer or employee of the designated State unit.

(2) Any handicapped individual (or, in appropriate cases, his parent or guardian) who is not satisfied with the final deci-

versy" doctrine, is more closely related to a standing than to an exhaustion requirement. *See U.S. ex rel. Ricketts v. Lightcap, supra,* at 1232.

**13.** The Supreme Court held in *Patsy, supra,* that "legislative purpose . . . is of paramount importance in the exhaustion context because Congress is vested with the power to prescribe the basic procedural scheme under which claims may be heard in the federal courts." —— U.S. at ——, 102 S.Ct. at 2560. While Congress may not have intended to require exhaustion under § 1983 generally, it remains free to enact superseding legislation which requires exhaustion under specific circumstances. *Id.* at —— – ——, 102 S.Ct. at 2565–2566 (42 U.S.C. § 1997, *et seq.* creates an express exception to the § 1983 non-exhaustion doctrine). Where, as here, Congress has passed a statute which makes express provision for a

state administrative scheme, its intent to require exhaustion of that scheme may readily be inferred. *Id.* at ——, n.4, 102 S.Ct. at 2561, n.4. The provisions of this later-enacted statute thus supersede the general rule that administrative remedies need not be enforced in § 1983 actions.

**14.** It is worthy of note that the Supreme Court was not required to address the exhaustion problem in *Thiboutot* because, as it expressly noted, plaintiff *had* exhausted his state remedies prior to filing a § 1983 action in the state court.

**15.** Although the underlying cause of action involved in the *Patsy* case was never identified, *Patsy* apparently involved constitutional claims only.

sion made under paragraph (1) by the Director of the designated State unit may request the Commissioner [of the federal Rehabilitation Services Administration] to review such decision. Upon such request the Commissioner shall conduct such a review and shall make recommendations to the Director as to the appropriate disposition of the matter. The Commissioner may not delegate his responsibilities under this paragraph to any officer of the Department of Health, Education and Welfare who is employed at a position below that of an Assistant Commissioner.

The procedures which have been adopted by the State of New Jersey in order to comply with 29 U.S.C. § 722(d)(1) are as follows: [16] Initially, a handicapped individual aggrieved "by any action or inaction of the Commission" may take an informal appeal to a representative designated by the Commission. N.J.A.C. 12:49–1.1. Following the informal hearing, the individual is entitled to a "fair hearing." N.J.A.C. 12:49–1.3. In accordance with current New Jersey practice, this "fair hearing" is presumably conducted by an administrative law judge from the Office of Administrative Law pursuant to the procedures set forth in N.J.S.A. 52:14B–10.[17] Following a decision by the administrative law judge, the agency head has forty-five (45) days within which to "adopt, reject or modify the recommended report and decision." N.J.S.A. 52:14B–10(c).

▮ In the present case, plaintiff availed himself of an informal administrative review of his dispute with the Commission. He was apparently then informed of his right to a fair hearing, but declined to request one. Finally, the agency Director, defendant Krajczar, informed plaintiff in writing of her decision to close the file. Under the circumstances, it appears that plaintiff has fully exhausted the state administrative remedies available to him. Defendants contend that plaintiff still must comply with the fair hearing requirement. By failing to request such a fair hearing in a timely fashion, however, plaintiff waived his right to that procedural step. By rendering her written decision without insisting upon a prior hearing, defendant Krajczar indicated that it was her intention as well to skip the fair hearing step. In any event, a fair hearing at this stage of the proceedings would be pointless since the agency head has already rendered her final written determination.

The only administrative remedy remaining to plaintiff is an appeal to the federal Commissioner. Even were he to make such an appeal, however, little purpose would be served since the Commissioner is empowered only to "make recommendations to the Director as to the appropriate disposition of the matter" and the Director has already rendered her opinion. It is well-established that "exhaustion of administrative remedies is not required if it would be futile to comply with the administrative procedures because it is clear that the claim will be rejected." *See Tokarcik v. Forest Hills School District,* 665 F.2d 443, 447, n.5 (3d Cir. 1981). Where, as here, the official to whom an appeal can be made is powerless to make more than a "recommendation" to the state agency, I conclude that the procedure is futile and need not be followed prior to instituting a court action.[18]

16. The procedures outlined here are authorized by N.J.S.A. 34:16–31, and appear to apply to the State Rehabilitation Commission rather than the N.J. Commission for the Blind and Visually Impaired. Since it appears that the Rehabilitation Commission has delegated some of its responsibilities to the Commission for the Blind, it will be presumed that the same procedures are applicable and fulfill the mandate of the federal statute and regulations.

17. Defendants contend in their briefs that these procedures apply here.

18. Although I do not believe that this remedy must be exhausted as a prerequisite to filing suit, plaintiff is perfectly free to pursue it as an alternative avenue of relief while the suit is pending. While the federal agency's views are not binding upon the State Director, they may be helpful in bringing about a voluntary resolution of the matter. In any event, the federal agency's interpretation of the program's requirements might constitute useful evidence in the present proceeding.

For the foregoing reasons, I conclude that plaintiff has exhausted all available administrative remedies and, therefore, is not barred from proceeding with this action.

### 4. *Sovereign Immunity*

■ Defendants next move to dismiss the action as to Norma Krajczar on the ground that she is entitled to immunity from suit under N.J.S.A. 59:3–2(b). A state, however, is not empowered to render its citizens immune from suit under a federal statute in the federal courts. *Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980); *cf. Ritchie v. Cahall*, 386 F.Supp. 1207 (D.N.J.1974). Rather, the applicable sovereign immunity doctrine derives from the Eleventh Amendment to the Constitution. Under the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a suit is available against a state official for injunctive relief under federal law. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Moreover, under certain circumstances, the state official may be liable in his individual capacity for damages. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see generally, Helfrich v. Commonwealth of Pennsylvania*, 660 F.2d 88 (3d Cir. 1981). Consequently, the motion to dismiss the action as to defendant Krajczar will be denied.[19]

### 5. *Motion for Leave to Amend*

■ Plaintiff moves for leave to amend his complaint to state an additional claim for violation of the federal Privacy Act, 5 U.S.C. § 552a. Defendants received and disbursed information concerning his case, plaintiff contends, without following the procedural dictates of the statute.

Defendants correctly point out, however, that the federal Privacy Act governs federal agencies only and does not cover the state agency involved in this case. *See* 5 U.S.C. § 552a(a)(4) and statutes referred to; *St. Michael's Convalescent Hospital v. State of California*, 643 F.2d 1369 (9th Cir. 1981); *cf. Kerr v. United States District Court*, 511 F.2d 192 (9th Cir. 1975), *aff'd on other grnds*, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). Accordingly, I will deny plaintiff's motion for leave to amend his complaint.[20]

### 6. *Summary and Conclusions*

For the reasons stated in this opinion, I conclude that plaintiff is entitled to assert a right of action against defendants under 42 U.S.C. § 1983; that he has exhausted his administrative remedies; and that the action may proceed against defendant Krajczar, who is not protected by an Eleventh Amendment immunity.

In the present posture of the case, I believe that plaintiff is entitled to a *de novo* proceeding on his federal statutory claims.[21]

---

**19.** Although defendant Krajczar is not entitled to immunity from suit in this action, the New Jersey Commission for the Blind and Visually Impaired is entitled to immunity under the Eleventh Amendment unless waived. The Eleventh Amendment bars suits by individuals against states and state agencies whether the relief sought be retrospective relief or prospective injunctive relief. *See Cory v. White*, —— U.S. ——, ——, 102 S.Ct. 2325, 2328–2329, 72 L.Ed.2d 694 (1982). While the Supreme Court held in *Edelman v. Jordan, supra*, that sovereign immunity "partakes of the nature of a jurisdictional bar," *id.* 415 U.S. at 678, 94 S.Ct. at 1363, the Court has since suggested that a court should not dismiss a defendant on this basis on its own motion. *Patsy, supra*, —— U.S. at ——, n.19, 102 S.Ct. at 2568, n.19. Consequently, unless it wishes to waive its sov-

ereign immunity, the state agency involved here should move promptly for dismissal.

**20.** Plaintiff may have enforceable privacy rights under N.J.S.A. 34:16–40. I will not address the question whether he can assert a violation of this statute as a pendent claim in my opinion today, however, because it is not at all clear that a private right of action exists to enforce the statutory provision.

**21.** If plaintiff were to pursue his final remedy of appealing to the federal Commissioner, review of the Commissioner's decision would presumably be available under the Administrative Procedure Act, 5 U.S.C. § 500, *et seq.*, in accordance with the standards articulated in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

 

*Cf. Tokarcik v. Forest Hills School District, supra*, at 449. Since the needs plaintiff alleges are immediate, there is little point in permitting this case to linger on for the year or so which might be necessary for a conventional trial. I urge plaintiff, therefore, to prepare an application for preliminary injunctive relief so that a prompt hearing may be held on the question whether he has been unlawfully denied Title I services. Pursuant to Rule 65(a)(2), the trial of the action may be advanced and consolidated with the application for injunctive relief.

Plaintiff's attorney is requested to submit an order in conformity with this opinion.

In light of the scant administrative record, however, and the limited power of the Commis-

sioner, such a procedure would not be effective.