**Detra JOHNSON–LLOYD**

v.

**VOCATIONAL REHABILITATION OFFICE, PENNSYLVANIA DEPARTMENT OF LABOR AND INDUSTRY, et al.**

Civ. A. No. 92–5082.

United States District Court,
E.D. Pennsylvania.

Jan. 22, 1993.

Detra Johnson–Lloyd, pro se.

Sue Ann Unger, Office of Atty. Gen., Philadelphia, PA, for defendants.

## MEMORANDUM

DALZELL, District Judge.

Plaintiff Detra Johnson–Lloyd filed this *pro se* action against the Vocational Rehabilitation Office of the Pennsylvania Department of Labor and Industry ("OVR") and Fred Motter, a former OVR counselor, for alleged violations of her rights under

Title I of the Rehabilitation Act of 1973,[1] and the Due Process clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, when they denied her federal certification as a sewing machine operator.

Now before us is defendants' motion to dismiss plaintiff's complaint. In their motion, defendants ask that we dismiss plaintiff's claims as to both defendants for failing to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). In the alternative, they ask that we dismiss plaintiff's complaint with regard to Fred Motter for insufficiency of service of process pursuant to Fed.R.Civ.P. 12(b)(5), and that we dismiss plaintiff's complaint with regard to OVR for insufficiency of process pursuant to Fed.R.Civ.P. 12(b)(4). For the following reasons, we will grant defendants' motion under Rule 12(b)(6) as to both defendants and, alternatively, as to defendant Motter under Rule 12(b)(5).

## I. BACKGROUND

The facts as alleged in the complaint are that Johnson–Lloyd is forty-one years old and mentally retarded. As a teenager, Johnson–Lloyd attended William Penn High School where she was trained and certified as a sewing machine operator. She secured a job as a power sewing machine operator with Albert Nipon's dress firm and then worked in the same capacity as an employee of the Defense Supply Agency ("DSA") until 1973.

In 1990, Johnson–Lloyd sought re-employment with DSA. She took and passed the agency's power sewing machine test, but before she could start employment with DSA, Johnson–Lloyd had to obtain OVR certification as a power sewing machine operator. In early October of 1990, Johnson–Lloyd contacted OVR and requested an appointment with a vocational rehabilitation counselor. One week later, she and her husband met with OVR counselor Fred Motter. Johnson–Lloyd provided Motter with her personal and work history as well as her records from high school. Motter then arranged for Johnson–Lloyd to be medically evaluated by Dr. Ciani, a physician, and Dr. Joanne Perilstein, a psychologist. Johnson–Lloyd's husband did not participate in the evaluations or provide the doctors with any additional information about his wife because Motter never informed him that he had the right to do so.

On September 19, 1990, Johnson–Lloyd received a form from the Office of Civilian Personnel inquiring as to when she would be available to start work at DSA. Not knowing when she would receive her certification from OVR, Johnson–Lloyd speculated on the form that she would be available for work by December 7, 1990.

When Johnson–Lloyd did not receive the results of her medical examinations from OVR as soon as she expected, her husband went to the OVR office to visit Motter and inquire as to the cause of the delay. To his dismay, Johnson–Lloyd's husband found that Motter had retired and OVR had closed his wife's file.

In response, Detra Johnson–Lloyd on September 3, 1992, instituted this suit alleging that the defendants' "willful and gross delay of [her] federal certification ... denied her employment nd [sic] also endangered the health and life for the lack of insuranceto [sic] her spouse" who suffers from high blood pressure. Complaint ¶ 20. As noted above, she brings her suit pursuant to the Federal Rehabilitation Act of 1973 and 42 U.S.C. § 1983.

## II. DISCUSSION

### A. Failure to State a Claim.

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we must take all allegations contained in the complaint as true and construe them in a light most favorable to the plaintiff. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir.1989). We may grant a motion to dismiss for failure to state a claim upon which relief can be granted only if "it appears beyond

1. 29 U.S.C. § 701 *et seq.*

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Frazier v. Southeastern Pa. Transp. Auth.,* 785 F.2d 65, 66 (3d Cir.1986).

### 1) *Rehabilitation Act of 1973.*

Johnson–Lloyd's first claim is that defendants' actions violated her rights under the Federal Rehabilitation Act of 1973. The Federal Rehabilitation Act ["the Act"] authorizes federal grants to states to assist the states in providing vocational rehabilitation services to the handicapped. *See* 29 U.S.C. §§ 720(a), (b). State participation in the program is voluntary, but if a state chooses to participate it must comply with federal guidelines and regulations implementing the Act. *See* 29 U.S.C. § 721. Pennsylvania has chosen to participate in the program and the General Assembly enacted the Pennsylvania Rehabilitation Act, 43 Pa.S. § 681.1 *et seq.,* to give explicit statutory authority for the state-federal programs in the Commonwealth.

The specific provisions of the Act under which Johnson–Lloyd brings her first claim are §§ 722(a), (b) and (d). In summary, § 722(a) provides that a rehabilitation counselor shall create an individualized written rehabilitation program for handicapped people who meet the requirements set forth in § 722(b). If the individual applying for services is found to be ineligible, however, § 722(a) directs the counselor to prepare and to give to the applicant a written statement which sets forth both the "reasons for such ineligibility determination" and "the rights and remedies" available to the applicant. § 722(b) details the information that the counselor must include in an individualized written rehabilitation program, and provides for annual review of such programs. Finally, § 722(d) of the Act mandates that participating states adopt fair hearing procedures for

administrative review of the counselor's decisions.[2]

▮ Johnson–Lloyd claims that the defendants violated her rights under § 722 when they did not promptly grant her the certification she requested. This claim, however, must be dismissed. Title I of the Act contains no express provision granting a private right of action to a handicapped individual who is denied services under a rehabilitation program. Moreover, the only Court in the Third Circuit that has addressed the issue of whether there is an implied private right of action under Title I concluded that no such right exists. *See Ryans v. New Jersey Comm'n for the Blind & Visually Impaired,* 542 F.Supp. 841, 844–846 (D.N.J.1982); *see also Jones v. Illinois Dep't of Rehabilitation Servs.,* 504 F.Supp. 1244 (N.D.Ill.1981).

We agree with Judge Debevoise's reasoning in *Ryans.* Judge Debevoise pointed out in that case that the original version of the Act contained no procedures by which an aggrieved individual could obtain review of a state decision denying rehabilitative services. 542 F.Supp. at 845. He noted, however, that Congress amended the Act in 1978 and added express provisions setting forth procedures for the administrative review of decisions. *Id.*

Judge Debevoise's canvass of the history of the 1978 amendment found that it was the product of a compromise between the Senate and House positions, and we shall only summarize his review on this point because we cannot improve upon it. The Senate proposal was that Title I be amended to provide for "a right to an administrative hearing, an appeal of the hearing decision to a three-man arbitration panel and a 'subsequent civil action for such relief [with the exception of money damages] as the court may determine is appropriate.'" *Id.* at 846 (quoting House Conf.Rep.No. 95–1780, 95th Cong., 2d Sess., *reprinted in* [1978] U.S.Code Cong. & Ad.News 7312, 7375, 7379). In contrast, the House proposal had no review procedures.

---

2. These review procedures are provided for under Pennsylvania law in § 9 of the Rehabilitation Act, 43 Pa.S. § 682.13.

The compromise between the House and the Senate is found in the current version of the statute, which authorizes only administrative review. As Judge Debevoise commented, the civil action remedy is "noticeably absent" from the current statute. *Id.* This strongly suggests that Congress' exclusion of that remedy was intentional.

Since we find Judge Debevoise's analysis of the issue entirely persuasive, we hold that there is no private right of action under Title I of the Rehabilitation Act, and therefore dismiss Johnson–Lloyd's claim under § 722.

### 2) 42 U.S.C. § 1983.

■ There is no similar barrier to Johnson–Lloyd's invocation of 42 U.S.C. § 1983. Nevertheless, even if her allegations are true and the defendants arbitrarily declined to follow the evaluative procedures set forth in the Pennsylvania statute, Johnson–Lloyd cannot prevail on her Due Process claim if Motter's actions were "random and unauthorized" and a post-deprivation remedy exists. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

The Supreme Court has explained that "when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." *Hudson,* 468 U.S. at 531, 104 S.Ct. at 3203. Therefore, the Court reasoned, when actions are "random and unauthorized", the availability of an adequate post-deprivation remedy satisfies Due Process. *Id.* at 533, 104 S.Ct. at 3204.

Because Johnson–Lloyd's complaint does not make an allegation that the defendants' actions were either authorized or part of a pattern or practice, as *Monell*[3] requires, and not "random and unauthorized", we must dismiss her Due Process claim under § 1983.

### B. *Insufficiency of Process.*

■ Although we will dismiss Johnson–Lloyd's complaint for failure to state a claim upon which relief can be granted, defendants also raised two questions regarding Johnson–Lloyd's service of process. We will address these concerns as representing an alternative holding on this motion.

Defendants first assert that Johnson–Lloyd's service on OVR was ineffective because the process was insufficient. Specifically, defendants claim that the complaint served on OVR was not a true and correct copy of the complaint filed with the Clerk of Court. They note that only Johnson–Lloyd's husband signed the copy of the complaint served on OVR. In contrast, Johnson–Lloyd crossed out her husband's signature on the copy actually filed with the Court, and replaced her husband's signature with her own. Defendants are unable to point to any other discrepancies between the complaint filed with the Court and that served on OVR.

Because complaints filed *pro se* are held to "less stringent standards than formal pleading drafted by lawyers", *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), and because the discrepancy between the two complaints is not a material error that hindered the defendants from effectively answering the complaint, we find that Johnson–Lloyd's service of process to OVR was sufficient.

### C. *Insufficiency of Service of Process*

■ Defendants also assert that Johnson–Lloyd did not serve Fred Motter with a copy of her complaint, and, therefore, Motter is not properly named as a defendant in this action. Defendants point out that in September of 1992, Johnson–Lloyd mailed copies of the pleadings to Motter at the OVR office. Motter, however, had retired from OVR in 1991, and there is no record that he had designated any person at the OVR office to accept service for him.

---

**3.** *Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Rule 4 of the Federal Rules of Civil Procedure sets forth the methods by which a plaintiff can effectuate service of process on a natural person. Under Rule 4(d)(1), a plaintiff may either deliver process "to the individual personally" or deliver process to a person "at the individual's dwelling place or usual place of abode." Service to Motter's place of former employment is clearly not effectual under this provision.

■ Even if the service was not authorized under Rule 4(d)(1), however, it may still be effective under Rule 4(c)(2). That subpart provides that alternative methods of delivering service are effective if they are authorized under state law. The Pennsylvania Rules of Civil Procedure allow a plaintiff to serve a defendant with a complaint either by "handing a copy to the defendant", Pa.R.Civ.P. 402(a)(1), or by handing a copy "at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof." Pa.R.Civ.P. 402(a)(2)(iii). Service at the defendant's "office or usual place of business", however, pertains only to service at a place of business in which the defendant holds a proprietary interest, not at a place where he or she is merely an employee. *Walsh v. SmithKline Beckman*, 1990 WL 149208, 2, 1990 U.S.Dist. LEXIS 13039, 6 (E.D.Pa. Oct. 1, 1990) (Newcomer, J.) (citing *City of Philadelphia v. Campbell*, 32 Pa.Cmwlth. 166, 378 A.2d 1043 (1977); *Philadelphia v. Davis*, 30 Pa. Cmwlth. 34, 373 A.2d 1154 (1977)).

Therefore, even if we did not dismiss the claims against Motter for Johnson–Lloyd's failure to state a claim, we would have to dismiss him from the action because Johnson–Lloyd's attempt to serve him did not comply with the service requirements of Rule 4.

## III. CONCLUSION

Based on the foregoing analysis, we will dismiss Johnson–Lloyd's complaint for failure to state a claim upon which relief may be granted. We will, however, afford Johnson–Lloyd forty-five days in which to amend her complaint to state a cause of action under § 1983. We urge that, during that time, Johnson–Lloyd consult with counsel of her choosing or with a representative of Philadelphia Volunteers for the Indigent Program before filing any amended complaint.