Kirk MARSHALL, Plaintiff–Appellant,

v.

Richard M. SWITZER, former Deputy Commissioner, Office of Vocational Rehabilitation of the New York State Education Department, in his individual capacity,

and

Lawrence C. Gloeckler, Deputy Commissioner, Office of Vocational and Educational Services for Individuals with Disabilities, New York State Education Department, in his individual and official capacity, Defendants–Appellees.

No. 1740, Docket 93–7186.

United States Court of Appeals, Second Circuit.

Argued June 17, 1993.

Decided Nov. 17, 1993.

---

Paul J. Lupia, Legal Aid Soc. of Mid–New York, Inc., Utica, NY (Michael Bagge, Legal Aid Society of Mid–New York, Inc., on the brief), for plaintiff-appellant.

Leslie B. Neustadt, Asst. Atty. Gen., Albany, NY (Robert Abrams, Atty. Gen., Peter H. Schiff, Deputy Sol. Gen., Nancy A. Spiegel, Asst. Atty. Gen., on the brief), for defendants-appellees.

Herbert Semmel, Paula Distabile, Ruth Lowenkron, New York Lawyers for the Public Interest, Inc., New York City, counsel for amici curiae American Medical Ass'n, American Public Health Ass'n, The ARC (formerly, Ass'n for Retarded Citizens of the U.S.), Center for Independence of the Disabled in New York, Inc., National Ass'n of Protection and Advocacy Systems, New York State Com'n on Quality of Care for the Mentally Disabled, Paralyzed Veterans of America, United Cerebral Palsy Ass'n, Inc., United Cerebral Palsy Ass'n of New York State, Inc., in support of plaintiff-appellant.

Before: CARDAMONE and MAHONEY, Circuit Judges, and CEDARBAUM,* District Judge.

CEDARBAUM, District Judge:

Kirk Marshall filed this action under 42 U.S.C. § 1983 [1] to challenge a policy of the

---

* Honorable Miriam Goldman Cedarbaum, United States District Judge for the Southern District of New York, sitting by designation.

1. Section 1983 provides in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any

New York State Education Department prohibiting reimbursement for "factory-installed" automotive equipment. Marshall claims that the policy violates Title I of the Rehabilitation Act of 1973, 29 U.S.C. § 720 *et seq.* This is an appeal from a Judgment of the District Court for the Northern District of New York (Frederick J. Scullin, Jr., Judge) granting appellees' motion to dismiss the complaint. The district court held that appellant could not bring this action under § 1983 because Title I does not require a participating state to do anything more than submit a plan satisfying certain criteria, and thus does not create enforceable rights, privileges, or immunities within the meaning of § 1983. Since the district court dismissed the complaint solely on this ground and did not address appellees' other arguments for dismissal, we address only the issue of whether appellant has a right under § 1983 to challenge the State's policy. We hold that he does.

## BACKGROUND

Appellant, a quadriplegic, became a client of the Office of Vocational Rehabilitation of the New York State Education Department (subsequently known as the Office of Vocational and Educational Services for Individuals with Disabilities, or VESID) in 1984. Shortly thereafter, a rehabilitation counselor concluded that appellant's vehicle would require many factory-installed options[2] to enable appellant to operate the vehicle independently. Appellant then purchased a Ford van with those options.

An individual written rehabilitation program ("IWRP"), dated August 24, 1987, was developed by VESID for appellant. The IWRP stated that VESID would provide for modifications of appellant's van which were "essential, justified, and recommended in writing by a qualified van evaluator," but also expressly stated that VESID would not provide factory-installed equipment available from a dealer. The refusal to provide factory-installed options was based on § 1350 of VESID's Policy Manual.

Two levels of administrative review followed. The application of § 1350 was upheld at both levels. An administrative fair hearing was then held. The hearing officer concluded that VESID should reconsider its policy of not providing factory-installed options. Appellee Switzer, former Deputy Commissioner of the Office of Vocational Rehabilitation, reversed the hearing officer's decision. He concluded that § 1350 was "appropriate as stated and applies to [appellant's] case."

In 1992, appellant filed this § 1983 action against Switzer and Lawrence C. Gloeckler, the Deputy Commissioner of VESID, claiming that VESID's policy deprived him of a right given to him by Title I of the Rehabilitation Act. Appellees moved to dismiss the complaint on the ground that the policy could not be challenged under § 1983. The district court granted the motion, and this appeal followed.

## DISCUSSION

In ruling on a motion to dismiss, a court must accept all material allegations of the complaint as true. *See Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1943; 118 L.Ed.2d 548 (1992). The complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

---

State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**2.** The factory-installed options at issue are automatic transmission, power steering, power brakes, rear heater, swing-out sliding door, steel belted radial tires, heavy duty battery, heavy duty alternator, front and rear air conditioning, tilt steering wheel, additional courtesy lights, tinted windows, low-mount mirrors, and heavy duty springs and shocks.

**928**

1. Section 1983 Jurisprudence

██ In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court held that individuals can sue under § 1983 for violation of statutory as well as constitutional rights. *Id.* at 4, 100 S.Ct. at 2504. However, § 1983 is available to enforce a violation of a federal statute only if (1) the statute at issue creates " 'enforceable rights, privileges, or immunities within the meaning of § 1983' " and (2) Congress has not " 'foreclosed such enforcement of the statute in the enactment itself.' " *Suter v. Artist M.*, —— U.S. ——, ——, 112 S.Ct. 1360, 1366, 118 L.Ed.2d 1 (1992) (quoting *Wright v. Roanoke Redev. and Hous. Auth.*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987)).

██ A statutory provision creates enforceable rights within the meaning of § 1983 only if it is "sufficiently specific and definite" to be within the competence of the judiciary to enforce. *Wright*, 479 U.S. at 432, 107 S.Ct. at 775; *see also Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) (citation omitted); *Suter*, —— U.S. at ——, 112 S.Ct. at 1369. Under *Suter*, it seems that if a statutory provision grants states significant discretion in meeting the statute's objectives, it is less likely that the provision creates enforceable rights. —— U.S. at ——, 112 S.Ct. at 1368. *Cf. Wilder*, 496 U.S. at 519, 110 S.Ct. at 2523 ("[t]hat the amendment gives the States substantial discretion in choosing among reasonable methods of calculating rates may affect the standard under which a court reviews whether the rates comply with the amendment, but it does not render the amendment unenforceable by a court"). Lastly, a provision does not create an enforceable right if it reflects a "congressional preference" as opposed to a binding obligation. *Wilder*, 496 U.S. at 509, 110 S.Ct. at 2517 (quoting *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 19, 101 S.Ct. 1531, 1541, 67 L.Ed.2d 694 (1981)). The specific statutory provisions at issue as

well as the entire legislative enactment should be analyzed to determine whether 29 U.S.C. §§ 721(a)(8) & (a)(9) create an enforceable right within the meaning of § 1983. *Suter*, —— U.S. at ——, 112 S.Ct. at 1367 (citation omitted).

2. Title I of the Rehabilitation Act of 1973

Title I of the Rehabilitation Act of 1973 authorizes grants to assist states in helping handicapped individuals prepare for and engage in gainful employment. 29 U.S.C. § 720(a) (1988 & Supp.1993).[3] States wishing to receive federal funding under Title I must submit to the Commissioner of the Rehabilitation Services Administration a plan for vocational rehabilitation services for a three-year period. *Id.* § 721(a). State plans "shall" provide, at a minimum, for the provision of specified vocational rehabilitation services. *Id.* § 721(a)(8). And state plans "shall" provide that an IWRP will be developed for each eligible handicapped individual. *Id.* § 721(a)(9). Each IWRP "shall" include a statement of the rehabilitation goals for, and the specific vocational rehabilitation services to be provided to, the client. *Id.* § 722(b)(1). "Vocational rehabilitation services" are defined as "any goods or services necessary to render an individual with handicaps employable, including, but not limited to . . . rehabilitation engineering services." *Id.* § 723(a)(12). "Rehabilitation engineering," in turn, is defined as "the systematic application of technologies, engineering methodologies, or scientific principles to meet the needs of and address the barriers confronted by individuals with handicaps in areas which include . . . transportation." *Id.* § 706(12).

The Commissioner must approve or disapprove state plans, depending upon fulfillment of the conditions outlined in the statute, *id.* § 721(b), and the Commissioner must cut off funding if, after notice and a hearing, he finds that in the administration of the plan the state is not substantially complying with any provision of the plan, *id.* § 721(c). A

---

**3.** The complaint was filed in June of 1992. On October 29, 1992, the Rehabilitation Act was amended. Rehabilitation Act Amendments of 1992, Pub.L. No. 102–569. Unless otherwise noted, all statutory citations in this opinion are to the United States Code as in effect on the date the complaint was filed. Application of the 1992 amendments would not change the outcome of this appeal.

client must be able to appeal to an impartial hearing officer any determination made by the rehabilitation counselor in charge of developing his IWRP. *Id.* § 722(d). Title I also authorizes grants to enable states to establish "client assistance programs" to help individuals gain access to the services available to them under the statute and state plan. *Id.* § 732(a).

■ Viewing appellant's claim in light of this statutory scheme leads to the conclusion that appellant is entitled to bring his claim under § 1983. Appellant does not allege that VESID did not develop any IWRP for him. Nor does appellant take issue with the rehabilitation counselor's determination that he does or does not need a specific vocational rehabilitation service to realize his vocational capabilities. Rather appellant argues that VESID's policy of prohibiting reimbursement for "factory-installed" options violates Title I. In other words, appellant seeks a judicial determination of whether factory-installed options are goods which § 721(a)(8) requires participating states to provide if necessary to render clients employable.

As explained above, Title I requires participating states to develop for each eligible client an IWRP that prescribes the "vocational rehabilitation services," including services in the area of "transportation," which are necessary to render the client employable. The language of §§ 721(a)(8) & (a)(9) is specific and definite, and therefore is within the competence of the judiciary to enforce. Indeed, the resolution of appellant's claim involves statutory construction, a task peculiarly within the competence of courts. Furthermore, the language of this section is mandatory.[4]

The district court held, and appellees argue, that appellant cannot bring his claim under § 1983 because, like the statute in *Suter*, Title I of the Rehabilitation Act requires nothing more of a state than to submit a plan for the Commissioner's approval. In *Suter*, the Supreme Court held that § 1983 could not be used to enforce the provision in the Adoption Assistance and Child Welfare

Act of 1980 that "reasonable efforts will be made" to prevent the removal of children from their homes and to facilitate reunification of families where removal has occurred. 112 S.Ct. at 1370. Among a number of other points, the Court did note that the statute in that case did not "provide notice to the States that failure to do anything other than submit a plan with the requisite features, to be approved by the Secretary, [was] a further condition on the receipt of funds from the Federal Government." *Id.* at ——, 112 S.Ct. at 1369. But the significant point in *Suter* was not that the statute in question only required a state to submit a plan to the federal agency but that the statute provided no guidance for measuring "reasonable efforts." —— U.S. at ——, 112 S.Ct. at 1368; *Chan v. City of New York*, 1 F.3d 96, 104 (2d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 472, 126 L.Ed.2d 423 (1993). Section 721(a)(8), by contrast, specifically lists the goods and services that states must furnish to eligible clients, and thus provides a measuring rod for compliance.

Appellees also argue that under Title I states have discretion to determine the manner in which they assist clients, *see* 29 U.S.C. § 721(a)(5)(A) (each State plan shall "contain the plans, policies, and methods to be followed in carrying out the State plan"); 34 C.F.R. § 361.42(b) (1992), and that therefore the statute does not create enforceable rights within the meaning of § 1983. As mentioned above, under *Suter* it appears that if a particular provision in a statute grants states significant discretion in meeting the statute's objectives, it is less likely that that provision creates enforceable rights. —— U.S. at ——, 112 S.Ct. at 1368. *Cf., Wilder*, 496 U.S. at 519, 110 S.Ct. at 2522. Nothing in the statute or regulations, however, gives a participating state discretion to prohibit under all circumstances the provision of goods or services listed in § 723(a). *See* 29 U.S.C. § 721(a)(8). Moreover, whatever discretion states may have in providing services is limited by Title I's pervasive policy of tailoring the provision of services to meet the individu-

---

4. We do not express any view as to the merits of the dispute, that is, whether §§ 721(a)(8) & (a)(9) prohibit states from adopting a policy barring

reimbursement for factory-installed automotive equipment, since the district court has not yet addressed that issue.

al needs of each client. *See Scott v. Parham,* 422 F.Supp. 111, 113 (N.D.Ga.1976).

Finally, appellees contend that Congress has foreclosed enforcement of Title I under § 1983, pointing out that the Supreme Court has held on two occasions that statutory remedial schemes were so comprehensive as to demonstrate an intent on the part of Congress to preclude enforcement through § 1983. *See Smith v. Robinson,* 468 U.S. 992, 1009–12, 104 S.Ct. 3457, 3467–69, 82 L.Ed.2d 746 (1984); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 20–21, 101 S.Ct. 2615, 2626–27, 69 L.Ed.2d 435 (1981).

It is true that the remedial scheme of Title I consists primarily of oversight by the Commissioner and administrative appeal. The Commissioner must approve a state plan in order for the state to receive funding, and the Commissioner can cut off funding for noncompliance with the plan. 29 U.S.C. § 721(b) & (c). A client can appeal to an impartial hearing officer any determination made by the rehabilitation counselor in charge of developing his IWRP. *Id.* § 722(d). The director of the state agency administering Title I can, in his discretion, review the hearing officer's determination based on standards of review developed by the state, *see* 34 C.F.R. § 361.48(c) (1992), and no review by the Commissioner of the state director's decision is available. Furthermore, Title I contains no provision authorizing individuals to sue in court. Finally, participating states must establish "client assistance programs" to help individuals access the services available to them under the statute and state plan. 29 U.S.C. § 732(a).

But this remedial scheme does not demonstrate a congressional intent to foreclose enforcement of §§ 721(a)(8) & (a)(9) under § 1983. As the Supreme Court has stated on numerous occasions, " 'We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy' for the deprivation of a federally secured right." *Wright,* 479 U.S. at 423–24, 107 S.Ct. at 770 (quoting *Smith v. Robinson,* 468 U.S. at 1012, 104 S.Ct. at 3468). In *Wright,* the Court held that the existence of similar federal oversight and administrative review did

not preclude enforcement under § 1983. *Id.* 479 U.S. at 424–29, 107 S.Ct. at 770–73. The Court distinguished *Sea Clammers* and *Smith v. Robinson* as follows: "In both Sea Clammers and Smith v. Robinson, the statutes at issue themselves provided for private judicial remedies, thereby evidencing congressional intent to supplant the § 1983 remedy." *Id.* at 427, 107 S.Ct. at 772. Not only does Title I contain no provision authorizing individuals to bring court actions, but courts have refused to imply a right of action under provisions of Title I. *See Johnson–Lloyd v. Vocational Rehabilitation Office,* 813 F.Supp. 1120, 1123–24 (E.D.Pa.1993); *McGuire v. Switzer,* 734 F.Supp. 99, 111 & n. 11 (S.D.N.Y.1990); *Ryans v. New Jersey Comm'n for the Blind and Visually Impaired,* 542 F.Supp. 841, 845–46 (D.N.J.1982); *Jones v. Illinois Dep't of Rehabilitation Servs.,* 504 F.Supp. 1244, 1249–51 (N.D.Ill. 1981), *aff'd,* 689 F.2d 724 (7th Cir.1982). *But see Scott,* 422 F.Supp. at 112–13 (*sub silentio* ). And appellant in effect concedes that there is no implied right of action under §§ 721(a)(8) or (a)(9).

This concession, however, does not undermine appellant's claim under § 1983. As we stated recently in *Chan:*

> The fact that a statute conferring substantive rights does not itself give its beneficiaries a private right of action to enforce it does not mean that the beneficiaries are without a private remedy. Section 1983 ... may be available as a vehicle for remedying violations of federal statutes as well as constitutional violations. And unlike the inquiry into whether a substantive statute confers a direct private right of action, the § 1983 inquiry begins with a presumption in favor of the right to bring suit, for the "general rule" is that § 1983 provides a remedy for violations of federal statutory rights unless "Congress has affirmatively withdrawn the remedy," *Wilder,* 496 U.S. at 509 n. 9, 110 S.Ct. at 2517 n. 9.

1 F.3d at 102–03 (citations partially omitted).

*McGuire* and *Ryans* make this distinction clear in the Title I context. Both of those cases, as previously noted, held that no direct right of action was available under the appli-

cable provisions of Title I. Both also ruled, however, that those provisions could be enforced by an action under § 1983. *See McGuire,* 734 F.Supp. at 111–12; *Ryans,* 542 F.Supp. at 846–49. We reach the same conclusion.

3. Legislative History

A review of the subsequent legislative history of the statute also supports our conclusion. In 1986, Congress amended Title I to remove review by the Secretary of Education of the state director's decisions concerning eligibility for Title I assistance and the formulation of IWRPs. Rehabilitation Act Amendments of 1986, Pub.L. No. 99–506, § 203(b), 100 Stat. 1807, 1815–17 (codified as amended at 29 U.S.C. § 722(b)(2)). After noting the repeal of this provision, the House Conference Report states: "Nothing in the conference agreement prohibits any individual from pursuing a private right of action." H.R.Conf.Rep. No. 955, 99th Cong., 2d Sess. 54 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3471, 3517, 3528. The congressional statement referred to suits stemming from grievances an individual might have with a state agency's determination of ineligibility for Title I assistance or with the formulation of a particular IWRP. The claim in this action is that VESID's policy of prohibiting reimbursement for "factory-installed" options is a violation of §§ 721(a)(8) & (a)(9). Such a claim falls squarely within the traditional realm of judicial competence and is even more appropriate for court determination under § 1983 than is the kind of suit referred to in the Conference Report.

## CONCLUSION

For the foregoing reasons, the Judgment of the district court is vacated and the case is remanded for consideration by the district court of the other grounds of appellees' motion to dismiss the complaint.