Edward FLIGHT, Plaintiff,

v.

Lawrence C. GLOECKLER, in his official capacity as Deputy Commissioner for Vocational and Educational Services for Individuals with Disabilities; Thomas Sobol, in his official capacity as Commissioner of the New York State Education Department; Office of Vocational and Educational Services for Individuals with Disabilities of the New York State Education Department; and The New York State Education Department, Defendants.

No. 93–CV–1206 (FJS) (GJD).

United States District Court,
N.D. New York.

March 13, 1995.

Neighborhood Legal Services, Buffalo, NY (William Mastroleo, of counsel), for plaintiff.

Dennis C. Vacco, Atty. Gen. of the State of N.Y., Albany, NY (Judith I. Ratner, Asst. Atty. Gen. of counsel), for defendants.

### DECISION AND ORDER

SCULLIN, District Judge:

This action was brought by plaintiff seeking declaratory and injunctive relief and monetary damages under Section 504 of the Rehabilitation Act of 1973 ("The Act"), Section 202 of the Americans with Disabilities Act of 1990 ("ADA") and 42 U.S.C. § 1983

for unlawful discrimination in the provision of services, programs and/or activities by a public entity. It is presently before the Court on cross motions for summary judgment.

## BACKGROUND

Plaintiff suffers from multiple sclerosis, a neurological impairment which is progressive in nature. He has been a client of New York State's Office of Vocational and Educational Services for Individuals with Disabilities ("VESID") since 1984. As a result of his impairment, plaintiff is wheelchair bound with limited use of his upper extremities and a deteriorating ability to speak.

Pursuant to the Title I of the Rehabilitation Act, plaintiff was issued an Individualized Written Rehabilitation Plan ("IWRP") by his counselors at VESID. Plaintiff's original IWRP, in 1991, included the vocational goal of data clerk. After plaintiff unsuccessfully attempted to secure such employment, however, his goal was changed to that of a homemaker, which is a valid employment goal according to VESID's regulations.

In 1992, plaintiff notified VESID that he was interested in purchasing a van, which he claimed was necessary for transportation as a result of his being wheelchair bound. Prior to making this purchase, plaintiff requested that VESID pay for the necessary modifications that would be required to accommodate his disability. Under the VESID policy statement § 1350.00, a VESID client can receive reimbursement for modifications necessary to customize a vehicle to accommodate their disabilities. This policy statement allows for a maximum reimbursement of $10,500 for modifications to a vehicle in which the client will function as the driver and a maximum of $4,000 for modifications to vehicles which the client will only utilize as a passenger.

As part of its evaluation of this request, VESID required plaintiff to have his driving abilities tested. These tests resulted in a determination that plaintiff was too severely disabled to drive a motor vehicle. As a result, in June 1992, VESID notified plaintiff

that he was only entitled to $4,000 reimbursement for modifications to his van. Furthermore, plaintiff's VESID counselor determined that a van was not necessary in order for him to meet his goal of homemaker.

Notwithstanding these determinations, plaintiff's counselor twice submitted a request for a waiver of the $4,000 cap to the central office staff.[1] Plaintiff's waiver requests were denied by central office on the grounds that special transportation for disabled persons was available to plaintiff and personal transportation, i.e., the van, was not necessary to help him achieve his goal of homemaker. Plaintiff then requested and received a fair hearing to challenge the denials. On November 12, 1992, an Administrative Law Judge ("ALJ") found in favor of VESID, affirming the waiver denial. Defendant Gloeckler, the Deputy Commissioner of VESID at the time, declined to review this decision and, as a result, the decision became final.

Despite his inability to procure a waiver, plaintiff purchased the van and paid to have it modified. The total cost of the necessary modifications was $10,400. Despite its earlier determination and the ALJ finding that plaintiff did not need a van in order to meet his vocational goal, VESID paid $4,000 towards the modifications pursuant to the limitation in section 1350.00. Plaintiff commenced this action in September, 1993, claiming that the policy set forth in Section 1350.00 violates section 504 of the Rehabilitation Act, section 202 of the ADA and 42 U.S.C. § 1983.

## DISCUSSION

Plaintiff's claim is based on his belief that he was discriminated against on the basis of his disability because he was denied full reimbursement for the van modifications solely because he was too disabled to drive. In essence, plaintiff claims that had he not been so severely disabled, he would have been able to drive his van and, therefore, he would have been entitled to $10,500 in reimburse-

---

1. The reimbursement caps are not strictly applied by VESID, waivers are available upon a showing of need.

ment for modifications pursuant to Section 1350.00.

## Section 504 of the Rehabilitation Act

Section 504 of the Rehabilitation Act was passed in order to guarantee "handicapped individuals access to programs or activities receiving federal financial assistance." *U.S. v. University Hosp., SUNY Stony Brook,* 729 F.2d 144, 159 (2d Cir.1984). The statute provides, in pertinent part:

> No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794(a). It is clear, however, that the intended purpose of section 504 was to ensure that handicapped individuals and non-handicapped individuals receive similar treatment and equal access to federally funded programs. *Traynor v. Turnage,* 485 U.S. 535, 548–49, 108 S.Ct. 1372, 1382, 99 L.Ed.2d 618 (1988); *Johnson by Johnson v. Thompson,* 971 F.2d 1487, 1494 (10th Cir.1992) ("Section 504 proscribes discrimination between the nonhandicapped and the 'otherwise qualified' handicapped."). It is therefore questionable as to whether Congress even intended section 504 to provide plaintiffs with a claim for discrimination vis-a-vis other handicapped individuals.

■ While the Supreme Court has never ruled upon whether section 504 applies to this type of claim, it has stated that "[t]here is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped

persons."[2] *Traynor,* 485 U.S. at 549, 108 S.Ct. at 1382. Similarly, the Second Circuit has noted that "the law governing § 504 did not clearly establish an obligation to meet [a handicapped individual's] particular needs vis-a-vis the needs of other handicapped individuals, but mandated only that services provided nonhandicapped individuals not be denied [a handicapped individual] because he is handicapped."[3] *P.C. v. McLaughlin,* 913 F.2d 1033, 1041 (2d Cir.1990). Accordingly, it would seem that section 504 was not intended to be used to advance claims of discriminatory distribution of services to handicapped persons under the Rehabilitation Act.

The logic of this ruling becomes even more apparent when one attempts to apply the facts of the case at bar to the test for establishing a prima facie section 504 claim.

■ In order to establish a prima facie case of discrimination under section 504 of the Rehabilitation Act, plaintiff must prove that (1) he is a "handicapped person" under the Act; (2) he is "otherwise qualified" for the benefit sought; (3) he is being denied the benefit "solely by reason of" his handicap; and (4) the benefit exists as part of a federally funded program. *Doe v. New York University,* 666 F.2d 761, 774 (2d Cir.1981).

■ In the case at bar, it is undisputed that two of these elements have been satisfied: that plaintiff's condition renders him handicapped under the Act, and that VESID is a federally funded program. However, in order for plaintiff to establish the "otherwise qualified" element of a section 504 claim, he must show that, absent the disability, he would have been entitled to the benefit which

2. In *Traynor,* discharged veterans who did not exhaust their "GI Bill" educational assistance benefits within 10 years of their military service sought an extension of that time period under a statute which allowed such an extension if use of the benefits during the ten year period was prevented by a physical or mental disorder. Plaintiffs claimed that they were entitled to extensions because they were disabled by alcoholism during the ten year period. The Supreme Court held that section 504 was not violated by denying extensions to those individuals whose alcoholism was due to their own "willful misconduct," rather than to a mental disorder.

3. In *McLaughlin,* the plaintiff was a mildly retarded young man who had been in several foster homes as a child and who, upon turning 18, had been placed in the custody of the State of Vermont. The plaintiff sued several employees of the Vermont Department of Mental Health alleging that, through their placement of him at various facilities, they had denied him "educational, residential and other services that [had] been made available to other handicapped individuals, solely on the basis of his disability." *McLaughlin,* 913 F.2d at 1041.

was denied him.[4] *Id.*, at 775. Because the Rehabilitation Act does not provide any benefits or services to non-handicapped individuals, plaintiff cannot be "otherwise qualified." Plaintiff cannot prove that he was denied services based on his handicap and, at the same time, prove that in spite of his handicap he was otherwise entitled to those services. Defendant accurately contends that plaintiff would be unable to establish such proof because, absent his disability, he would not be eligible for *any* services under the Act.

The Second Circuit has held that section 504 does not apply to medical treatment cases where "the handicap itself ... gives rise to, or at least contributes to, the need for services." *University Hosp.*, 729 F.2d at 156. This determination was based upon an analogous situation to the present case—one in which, absent the handicap, there would be no need for the medical care, therefore the handicapped individual could never be "otherwise qualified" for the treatment. The Court reasoned that "one would not ordinarily think of a newborn infant suffering from multiple birth defects as being 'otherwise qualified' to have corrective surgery...." *Id.; see also, Johnson*, 971 F.2d 1487; *Woolfolk v. Duncan*, 872 F.Supp. 1381.

It would seem that the medical treatment context is directly analogous to the Rehabilitation Act context, thereby requiring similar treatment. Though some courts have held that section 504 is available to handicapped plaintiffs suing for discriminatory distribution of services under the Act, none have directly addressed the situation presented in the case at bar.[5] Here, plaintiff alleges that he was denied specific services, i.e., the $10,-500 reimbursement limitation for van modifications, "solely by reason of" his having multiple sclerosis. However, to establish such a claim, the plaintiff must show that the denial of services (full reimbursement) was the result of class-based discrimination towards all multiple sclerosis sufferers.

The test, for establishing such a discriminatory animus, is not whether *any* other handicapped individuals are receiving the alleged benefits, but rather whether others *"with the same handicap"* as plaintiff are receiving the benefits.

> The word *solely* provides the key: the discrimination must result from the handicap and from the handicap alone. If others with the same handicap do not suffer the discrimination, then the discrimination does not result "solely by reason of [the] handicap."

*Johnson*, 971 F.2d at 1493 (emphasis added). Plaintiff argues that he has established discrimination "solely based upon his disability" because "VESID will not provide the service [he] seeks to those individuals like [himself] who are unable to drive ... because of their disability." Pl.Memo. at 9. This argument fails because plaintiff is contending that, for purposes of this test, his handicap is his inability to drive, rather than his multiple sclerosis.

While it is common for people to suffer from the same handicap, it would be uncommon to expect those same people to have the same *needs* as a result of that handicap. Therefore, allowing a plaintiff to prosecute a claim under section 504 without establishing some type of class-based discrimination, would effectively dilute the Rehabilitation Act's "pervasive policy of tailoring the provision of services to meet the individual needs of each client." *Marshall v. Switzer*, 10 F.3d 925, 929 (2d Cir.1993) (citation omitted).

---

**4.** The Supreme Court has held that a person is "otherwise qualified" if he or she "meet[s] all of a program's requirements in spite of his handicap." *Southeastern Comm. Coll. v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2366–67, 60 L.Ed.2d 980 (1979).

**5.** The Second Circuit has yet to rule on this issue. There is, however, one Southern District of New York case which held that a handicapped plaintiff was entitled to pursue a section 504 action based upon an allegedly discriminatory distribution of services under the Rehabilitation Act. In *McGuire v. Switzer*, 734 F.Supp. 99, 114–15 (S.D.N.Y.1990), a paraplegic was denied a level of reimbursement for tuition and maintenance expenses equal to that provided to visually-disabled individuals. This is clearly distinguishable from the case at bar, however, in that this allegedly discriminatory distribution of services was based on the *types* of disabilities suffered by the clients, rather than on individualized assessments of each client's needs.

Thus, the plaintiff has failed to show that defendants possessed a discriminatory animus with respect to all of its clients suffering from multiple sclerosis and that he was denied this service "solely by reason of" his handicap. Accordingly his section 504 claim must be denied.

### Section 202 of the Americans with Disabilities Act

Section 202 of the Americans with Disabilities Act provides that

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Plaintiff's claim under this section is based upon the same facts as outlined above, and both parties concede that "[t]he ADA provides the same remedies and relief as § 504 for discrimination against individuals with disabilities." Pl.Memo. at 5.

Plaintiff contends, however, that, while its remedies are the same, the application of section 202 is different than that of section 504. In support of this contention, plaintiff refers to the regulations which were enacted to implement the ADA. More specifically, plaintiff cites Subpart B in § 35.130(b)(1) which states, in pertinent part,

> A public entity, in providing any aid, benefit, or service, may not, directly or through contractual licensing, or other arrangements, on the basis of disability
>
> (iv) Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others.

28 C.F.R. § 35.130(b)(1)(iv).

Plaintiff argues that the use of the term "any class" in subsection (iv) "denotes more than one class of individual[s] and therefore makes clear that the regulation applies to types of disabilities and not generically to disability." Pl.Memo. at 11. In accordance with this interpretation, plaintiff asserts that it may be inferred that the regulation prohibits discrimination between different classes of disability. *Id.* While this may be an accurate assessment of this subsection, it does not strengthen plaintiff's claim.

■ The case at bar involves a situation where plaintiff was denied a higher cap on modification reimbursements because he only intended on using his vehicle as a passenger. As stated above, plaintiff's handicap was his multiple sclerosis, not his inability to drive. While it is correct that it is VESID's policy to provide a lower reimbursement cap for its clients who are unable to drive their vehicles, this cap is applied regardless of what *type* of disability the client is suffering from. Therefore, such a policy does not constitute discrimination directed toward a *class or type of disability,* and plaintiff's section 202 claim must be denied.[6]

### Section 1983

Plaintiff's final cause of action is based upon 42 U.S.C. § 1983. In order to establish a prima facie claim under section 1983, plaintiff must show that a person or persons acting under color of state law has deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Fonte v. Board of Mgrs. of Cont. Towers Cond.,* 848 F.2d 24 (2d Cir. 1988). Plaintiff has failed, however, to establish that VESID denied him his rights under the Rehabilitation Act by limiting his vehicle modification reimbursement.

■ In the absence of any specific indication of what right plaintiff claims he was denied, it is assumed that he is claiming that he had a right to the $10,500 limitation on modification reimbursements under the Rehabilitation Act. Plaintiff has not, however, pointed to anything which would indicate that such a right exists under the Act. Instead, plaintiff relies on a policy directive which was issued by the Rehabilitation Services Administration, the agency responsible for imple-

---

6. Additionally, as with the section 504 claim, allowing a VESID client to pursue a section 202 claim for discriminatory distribution of services vis-a-vis another handicapped client would eviscerate the Act's intended purpose of providing individualized services to the handicapped.

menting the Act, in 1987. This directive permits state vocational rehabilitation agencies to establish maximum dollar limits on reimbursements for services provided the limits

> (1) [are] designed to ensure the lowest reasonable cost to the program for such service, (2) [are] not so low as to effectively deny any client a necessary service, and (3) [are] not absolute and permit[ ] exceptions so that individual client needs can be addressed.

RSA Policy Directive 88–3 (Nov. 1987).

In the case at bar, VESID's policy section 1350.00 meets all three of these tests. The limits are designed to ensure the lowest cost to the agency by providing a higher limit for clients who will be driving their vehicles since these modifications are generally more extensive and, therefore, more costly. Ratner Aff. ¶ 15. Secondly, in plaintiff's case, the limits did not serve to deny him the modifications that he requested, as he purchased a fully-modified van. In fact, plaintiff received a $4,000 reimbursement for the modifications to his van, notwithstanding VESID's earlier determination that the purchase of a vehicle was not necessary for him to achieve his occupational goal. And finally, as noted above, the reimbursement limits contained in section 1350.00 are not absolute, as waivers may be obtained from VESID central office. Therefore, VESID policy section 1350.00 conforms to the requirements established by the Rehabilitation Services Administration, and plaintiff had no statutory right to the $10,500 limit on reimbursements. Accordingly, plaintiff's section 1983 claim must be denied as he has failed to establish the denial of any federal constitutional or statutory right.

Therefore, it is hereby

ORDERED, that plaintiff's motion for summary judgment is DENIED; and it is further

ORDERED, that defendants' motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**