68 F.3d 61
 4 A.D. Cases 1699, 13 A.D.D. 312
 Edward FLIGHT, Plaintiff-Appellant,
v.
Lawrence C. GLOECKLER, in his official capacity as Deputy
Commissioner for Vocational and Educational Services for
Individuals with Disabilities; Thomas Sobol, in his
official capacity as Commissioner of the New York State
Education Department; Office of Vocational and Educational
Services For Individuals With Disabilities of the New York
State Education Department; New York State Education
Department, Defendants-Appellees.
 No. 316, Docket 95-7308.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 17, 1995.
Decided Oct. 19, 1995.
 
 William F. Mastroleo, Buffalo, New York (Neighborhood Legal Services, Inc., Buffalo, New York, of counsel), for Plaintiff-Appellant.
 Patrick Barnett-Mulligan, Assistant Attorney General of the State of New York, Albany, New York (Dennis C. Vacco, Attorney General, Peter H. Schiff, Deputy Solicitor General, Peter G. Crary, Assistant Attorney General, Albany, New York, of counsel), for Defendants-Appellees.
 Before: LUMBARD, CARDAMONE, and MAHONEY, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Edward Flight appeals from a judgment entered March 24, 1995 in the United States District Court for the Northern District of New York, Frederick J. Scullin, Jr., Judge, that dismissed Flight's claims that defendants-appellees had unlawfully discriminated against him in the provision of payment for modifications to a vehicle in violation of Section 504 of the Rehabilitation Act of 1973, as amended (the "Rehabilitation Act"), 29 U.S.C. Sec. 794,[1] and Section 202 of the Americans with Disabilities Act of 1990, as amended (the "Disabilities Act"), 42 U.S.C. Sec. 12132.[2]
 
 
 2
 Flight is afflicted with multiple sclerosis, a degenerative condition that attacks the central nervous system. He is restricted to a wheelchair, and has limited use of his upper body. Flight has been a client of New York State's Office of Vocational and Educational Services for Individuals with Disabilities ("VESID") since 1984. VESID issued Flight an individualized written rehabilitation plan ("IWRP") in 1991, which currently ascribes to Flight an employment goal of being a homemaker.
 
 
 3
 In 1992, Flight decided to purchase a van, and petitioned VESID for financial assistance in order to make modifications necessary for him to use the van. VESID's policy statement Sec. 1350.00, Vehicle Modifications and Adaptive Equipment (Sept.1985), determines the amount of money that VESID will provide for the modification of a vehicle for a client who "is pursuing a vocational objective for which the equipment or modification is necessary, as shown on the [client's] IWRP." Section 1350.00 allows VESID to spend up to $10,500 in order to modify a van "if the client will function as driver of the vehicle," but only up to $4,000 "if the client will only use the vehicle as a passenger."
 
 
 4
 In response to Flight's request, VESID tested Flight's driving abilities and determined that he was too severely disabled to drive a motor vehicle. VESID also determined that a van was not necessary to enable Flight to function as a homemaker, but nevertheless offered to provide $4,000 towards the cost of modifying Flight's van. Flight then attempted, with the support of his VESID counselor, to obtain a waiver of the $4,000 limitation, and a hearing was ultimately held regarding the requested waiver, but VESID persisted in its denial. Flight then purchased the van, and had it modified at a cost of $10,400. VESID contributed $4,000 towards this expense.
 
 
 5
 Flight brought suit in the district court seeking declaratory and injunctive relief, as well as monetary damages. Flight alleged that VESID's policies regarding the distribution of money for the modification of vehicles violates Sec. 504 of the Rehabilitation Act, see supra note 1, Sec. 202 of the Disabilities Act, see supra note 2, and (derivatively) 42 U.S.C. Sec. 1983 by denying to Flight "under color of any ... regulation ... of any State ... rights ... secured by the ... laws" of the United States. Id. The district court denied summary judgment to Flight and granted summary judgment to defendants-appellees. Flight v. Gloeckler, 878 F.Supp. 424 (N.D.N.Y.1995). This appeal followed.
 
 
 6
 In order to establish a violation of Sec. 504, a plaintiff must show (1) that he has a disability for purposes of the Rehabilitation Act, (2) that he is "otherwise qualified" for the benefit that has been denied, (3) that he has been "denied the benefits" solely by reason of his disability, and (4) that the benefit is part of a "program or activity receiving Federal financial assistance." Id., supra note 1; Doe v. New York Univ., 666 F.2d 761, 774-75 (2d Cir.1981).
 
 
 7
 We have held that "[t]he [Rehabilitation] Act does not require all handicapped persons to be provided with identical benefits." P.C. v. McLaughlin, 913 F.2d 1033, 1041 (2d Cir.1990). The statute "d[oes] not clearly establish an obligation to meet [a disabled person's] particular needs vis-a-vis the needs of other handicapped individuals, but mandates only that services provided nonhandicapped individuals not be denied [to a disabled person] because he is handicapped." Id. Thus, challenges to the allocation of resources among the disabled under the Rehabilitation Act are disfavored.
 
 
 8
 In this case, Flight is not being denied a benefit which is made available to nonhandicapped individuals and for which Flight is "otherwise qualified." Rather, VESID's subsidies for vehicle modifications are made available only to handicapped individuals. See Flight, 878 F.Supp. at 426-27.
 
 
 9
 Furthermore, Flight was not denied the additional subsidy "solely by reason of ... his disability" within the meaning of Sec. 504. The denial of the increased allowance was not based upon Flight's classification as a victim of multiple sclerosis, but rather upon the type of modification that he requested. See Marshall v. Switzer, 10 F.3d 925, 929-30 (2d Cir.1993) (noting Rehabilitation Act's "pervasive policy of tailoring the provision of services to meet the individual needs of each client").
 
 
 10
 Flight contends that his disability is not multiple sclerosis, but rather an inability to drive, but this argument is unpersuasive. A disability is a "physical or mental impairment," 29 U.S.C. Sec. 706(8)(A), (B), i.e., "any physiological disorder or condition ... affecting" the neurological system. 34 C.F.R. Sec. 104.3(j)(2)(i)(A) (emphasis added). Clearly, an inability to drive is not a physiological condition, but rather a result of a physiological condition, viz., Flight's neurological disorder.
 
 
 11
 Flight also argues that VESID's policy violates Sec. 202 of the Disabilities Act. See supra note 2. The regulations implementing this statute provide:
 
 
 12
 A public entity, in providing any aid, benefit, or service, may not, directly or through contractual licensing, or other arrangements, on the basis of disability--
 
 
 13
 ....
 
 
 14
 (iv) Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others.
 
 
 15
 28 C.F.R. Sec. 35.130(b)(1).
 
 
 16
 The district court correctly noted that this provision is inapplicable because the distinction in the present case is not based upon Flight's disability, multiple sclerosis, but rather upon his inability to drive. See Flight, 878 F.Supp. at 428. Thus, VESID does not provide varying services or benefits "on the basis of disability" within the meaning of Sec. 35.130(b)(1), but rather upon the basis of the recipient's ability to make meaningful use of the service or benefit provided. The regulation cannot plausibly be read to preclude sensible distinctions of this sort in addressing the remedial needs of disabled persons.
 
 
 17
 We accordingly affirm the judgment of the district court.
 
 
 
 [1]
 Section 504 provides in pertinent part:
 (a) No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....
 
 
 [2]
 Section 202 provides in pertinent part:
 [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.